**Michael E. SHARP & Jacquelyn K. Sharp, Appellants–Plaintiffs,**

v.

**LABREC, INC. and Contractors United, Inc., Appellees–Defendants.**

**No. 03A01–9311–CV–370.**

Court of Appeals of Indiana, First District.

Nov. 17, 1994.

Transfer Denied Feb. 24, 1995.

---

G. Terrence Coriden, Lawson, Pushor, Mote & Coriden, Columbus, for appellants.

Edward McCrea, McCrea & McCrea, Bloomington, for appellees.

## OPINION

ROBERTSON, Judge.

The plaintiffs below, Michael and Jacquelyn Sharp, appeal a judgment in favor of LaBrec, Inc. and its successor, Contractors United, Inc., in the Sharps' action for personal injuries sustained by Michael Sharp on May 22, 1990, when an eleven-ton boiler, which was being lifted from the Parkside Elementary School in Columbus, Indiana by a crane operated by LaBrec moved into him. The Sharps argue in this appeal that the trial court erroneously refused their tendered instruction on res ipsa loquitur which was fashioned after Indiana Pattern Jury Instruction No. 7.13.[1]

LaBrec concedes that the instruction correctly states the law and that no other instruction adequately covered the tendered instruction's substance. What is in dispute is whether the evidence supported the giving of the instruction. LaBrec maintains that the evidence is insufficient to establish that it had exclusive control of the injuring instrumentality. To the contrary, we find evidence in the record warranting an instruction on res ipsa loquitur; accordingly, we reverse.

The circumstantial evidence rule known as the doctrine of res ipsa loquitur recognizes that a defendant's negligence may be inferred where the physical cause of injury and attendant circumstances are such that in the light of ordinary experience the plaintiff's injury would probably not have happened if those who had management or control of the causative instrument of injury had exercised proper care. *Merriman v. Kraft* (1969), 253 Ind. ·58, 61–2, 249 N.E.2d 485, 487. The rule applies where the agency or thing which causes injury is in the exclusive control of the defendant or his agents, and the occurrence which produces the injury is one which in its nature does not ordinarily happen if those in charge exercise due care. *Union Traction Co. v. Berry* (1919), 188 Ind. 514, 530, 124 N.E. 737, 739.

To obtain the desired inference, the plaintiff must prove that exclusive management and control of the injuring instrumentality, or the right and duty to control, was in the defendant at the time of injury. *Bituminous Fire & Marine Ins. Co. v. Culligan Fyrprotexion, Inc.* (1982), Ind.App., 437 N.E.2d 1360, 1365. The requirement of exclusive control does not mean actual physical control at the time of the accident, if the instrumentality or dangerous agency is one

---

**1.** The Sharps' tendered instruction reads:

Under Indiana law there is a doctrine of law called *res ipsa loquitur.* This doctrine applies if you, the Jury, find as follows:

First: That Michael Sharp was injured as a proximate result of the LaBrec Crane;

Second: That the LaBrec crane, causing the injury, was under the exclusive control of the Defendants; and

Third: That the accident is such as in the ordinary course of things does not happen, if LaBrec who has the exclusive control, uses proper care.

If you find that this doctrine of *res ipsa loquitur* applies then you, the Jury are required to infer or to presume negligence of the Defendant. The Defendant then has the burden to come forward with an explanation as to its actions. However, even if the Defendant does so come forward with an explanation, the presumption continues. The weight to be given this presumption or inference and its relationship to all of the other evidence rests solely with you.

During discussions over the tendered instruction, the Sharps agreed to modify their proposed instruction in such a manner as to permit the jury to determine for itself the instrumentality which caused Michael Sharp's injury. The trial court decided instead to refuse the instruction. (R. 1312). We do not read the court's comments to be a determination, as LaBrec argues in its brief, that the instrumentality causing injury was the boiler itself or the boiler in isolation from the crane to which it had been attached.

which it is the defendant's responsibility to maintain at all times and the defendant's responsibility in this respect cannot be delegated. *See Southern Indiana Gas & Electric Co. v. Indiana Ins. Co.* (1978), 178 Ind. App. 505, 383 N.E.2d 387. It is also sufficient to prove that the instrumentality causing injury was in the possession and control of the defendant at the time the negligent act was committed, together with further proof of the absence of any cause intervening between the negligent act and injury. *Bituminous Fire & Marine Ins. Co.*, 437 N.E.2d at 1365.

■ The evidence in a res ipsa loquitur case typically points to several alternative explanations involving negligence without indicating which of them is more probable than the other and seldom points to a single specific act or omission. *New York, Chicago & St. Louis Railroad Co. v. Henderson* (1957), 237 Ind. 456, 468; 146 N.E.2d 531, 539 (quoting Harper & James, Torts Vol. 2 § 19.10, pp. 1096, 1097). The evidence may show specifically the proximate cause but then again nothing may be shown aside from the basic facts from which the inference of negligence arises. *Id.* at 469, 146 N.E.2d 531. Thus, in many cases, the plaintiff may be asking the jury to draw a double inference: that the injury was caused in a particular manner and that the defendant's conduct with respect to that cause was negligent. *Shull v. B.F. Goodrich Co.* (1985), Ind.App., 477 N.E.2d 924, 926, *trans. denied.* A number of different causes or inferences may be left for the trier of fact to evaluate. *Henderson,* 237 Ind. at 470, 146 N.E.2d 531. The plaintiff relying upon the doctrine of res ipsa loquitur need not exclude all possible causes or inferences other than the defendant's negligence, *Shull,* 477 N.E.2d at 926, or prove that the only cause of the accident was the defendant's negligence. *Kraft,* 253 Ind. at 61, 249 N.E.2d 485. All that is needed is evidence from which reasonable persons can say that on the whole it is more likely than not that there was negligence associated with the cause of the event than that there was not. *Shull,* 477 N.E.2d at 926.

■ Whether the doctrine applies in any given case is a mixed question of law and fact. *Id.* at 927. When presented with a request for a res ipsa loquitur instruction, the trial court's duty is to determine whether the plaintiff produced evidence from which the jury could reasonably conclude the existence of the underlying elements of exclusive control and probability of negligence. *K–Mart Corp. v. Gipson* (1990), Ind.App., 563 N.E.2d 667, 670, *trans. denied; Shull,* 477 N.E.2d at 927. This is a sufficiency question. *Id.* There only need be evidence and reasonable inferences therefrom, which, when viewed in the light most favorable to the proponent, would support the jury verdict contained in the instruction. *Id.* If there is no such evidence, the instruction is properly refused. *Id.* at 928. On the other hand, if there is evidence from which a jury could reasonably find the existence of the elements, then the conditional res ipsa loquitur instruction, which merely tells the jury that if they do find the existence of these elements then they may draw the inference of negligence, must be given. *Id.* Hence, we consider whether the Sharps presented evidence from which a reasonable jury could conclude that the boiler would not have moved into Michael Sharp in the absence of negligence on the part of the party in control of the boiler and that LaBrec was the party in exclusive control of the boiler.

■ Sharp worked as a pipe fitter for R. E. Greismer which had the responsibility of dismantling the old boiler at the school, removing the piping associated with the boiler and installing the new one. Greismer employees prepared the boiler for removal by welding lifting eyes onto it. Cables positioned on the top center and on the ends were then attached to the boiler with metal, horseshoe-shaped shackles. Greismer's foreman attached one tag line to guide the boiler should it spin on its axes.

Greismer contracted with LaBrec to furnish a crane and do the lifting of the old and new boilers. LaBrec sent a crane operator to do the lift and an "oiler," who was responsible for the rigging and assembling of the crane, positioning the crane, hooking the lift up and signaling the operator during the lift.

LaBrec brought the cables to be used in the lift and its own oak cribbing or shoring for placement under the outriggers to stabilize the crane. The operator and oiler placed the cribbing themselves, but did not attach the cables to the boiler.

The lift was to be a blind lift, i.e., the crane operator would not be able to see the boiler because it was down behind a wall, and he could not see the boom of the crane. The operator would rely on signals from the oiler on the roof who would relay signals from Greismer employees in the boiler room. The crane operator did not have the boiler within his vision when the accident occurred. The only person who took part in the lift who was in a position to see the entire operation by turning his head was the oiler who was stationed on the school roof.

The evidence favorable to the Sharps established that as the boiler came off the recessed floor, it did not sway or move appreciably. The boiler had been raised approximately one and one-half to two feet and had been holding still, off the ground, for about fifteen minutes, while an I-beam above it was removed and persons who might be in the boiler's path during the lift were warned to move, when Sharp was injured. Sharp's injury occurred while the boiler was suspended and before any signals had been given to commence the lift. Without warning, the boiler suddenly swung into Sharp who had been properly positioned inside the boiler room to assure that the boiler did not get hung up on beams or pipes on the way up.

Once the lift had begun and the boiler came off the ground, the evidence favorable to the Sharps established that Greismer employees no longer had responsibility for the boiler or the ability to exercise physical control over it other than through signaling or to keep it from turning. LaBrec's crane operator had sole control over the boiler when it suddenly shifted. He testified that several minutes elapsed from the time the lift was stopped and he was given the "lock down" signal to discontinue the lift and that the right rear outrigger did sink during the lifting procedure. Thus, the Sharps' evidence showed that at the time of injury, LaBrec had exclusive physical control over the boiler

by reason of its exclusive control over the crane.

Greismer employees testified that after Sharp had been injured, and the lift had been called off, they observed the LaBrec crane. Boards positioned under the crane's outriggers to provide stability had broken, were sticking up at the end and had sunk in the mud. One of the stabilizer bars or outriggers which were hydraulically set out and locked into position had sunk about a foot on the side which was in the direction the boiler moved. The ground was a sandy loam and saturated.

The Sharps' evidence offered the jury multiple theories of causation. Ancel Harden, the crane operator, testified that it was important that the crane remain level during the lift, or as close to level as possible. He acknowledged that if an outrigger sinks and causes the crane to go out of level that the load can move in the same direction even though the tip of the boom may stay where it is. Harden also acknowledged that the load could tilt under those circumstances without the operator knowing it, and that this load could have done anything without him knowing it because he could not see it and could not see the tip of the boom. Harden also testified that it was the crane operator's job to determine the size of the cribbing, which depended upon the crane's stability and the softness of the ground.

Oiler Tony Smith conceded that it was extremely important to have the boom centered over the load. Greismer employees testified that the LaBrec employees moved the crane to center it up and the Greismer foreman did not signal where to move the crane to get it centered or direct the oiler where to stand.

Thus, the evidence suggests certain specific theories of negligence and causation, that Harden did not have the crane level when the lift began or keep it level throughout the lift, that he used cribbing which was either defective or inadequate to stabilize the load given its weight and the softness of the ground, and that the boom was not properly centered, as well as a more general circumstantial theory of negligence, that the load

had stabilized and was being held in place by LaBrec's crane and operator, that Greismer employees had only the ability to prevent the load from spinning by holding onto the tag line, and that without apparent reason the load moved suddenly into Sharp who had no time to extricate himself. This evidence is sufficient to permit a reasonable jury to conclude that LaBrec had exclusive control over the boiler at the time of injury and also, possibly, at the time of the negligent act, if the jury were to determine they occurred at different times, and to conclude that no other cause intervened. When coupled with the other evidence of record establishing that a boiler held stationary for several minutes by a crane ordinarily does not suddenly change position in the absence of negligence, the evidence favorable to the Sharps is sufficient to permit a jury to infer the negligence of LaBrec and causation in their favor. Hence, we conclude that the trial court erred in refusing the conditional res ipsa loquitur instruction tendered by the Sharps.

We add that there were many conflicts in the evidence on critical factual matters. The Sharps called several witnesses who observed the boiler suspended for a period of time off the ground and who testified that they saw the right rear outrigger sunk in the mud. LaBrec's crane operator testified that he had participated in thousands of lifts and did not feel the boiler come off the ground. He also testified that he routinely feels the crane shift and balance and also experiences it sink during a lift and that these experiences were nothing unusual. The LaBrec employees also testified that the oak cribbing was not damaged or broken and they discarded none of it after this lift. They changed nothing once the boiler was finally lifted from the school, leaving the inference for the jury that the boiler's shift was caused by a boom which was not properly centered by Greismer employees. Given these many factual controversies, we can only conclude that the verdict may have been different had the jury been properly instructed on the doctrine of res ipsa loquitur. The judgment in favor of LaBrec should therefore be re-versed and the cause remanded for a new trial.

Judgment reversed and remanded.

BAKER and NAJAM, JJ., concur.