**CITY OF TERRE HAUTE,**
**Appellant–Defendant,**

v.

**Larry SIMPSON, Appellee–Plaintiff.**

No. 84A01–0007–CV–217.

Court of Appeals of Indiana.

March 30, 2001.

---

Scott M. Kyrouac, John Christopher Wall, Wilkinson Goeller Modesitt Wilkinson & Drummy, Terre Haute, IN, Attorneys for Appellant.

Bruce D. Aukerman, Max E. Goodwin, Chris Wrede, Mann Law Firm, Terre Haute, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge

### Case Summary

The City of Terre Haute ("the City"), defendant below, appeals the trial court's judgment, entered after a jury trial, in favor of plaintiff Larry Simpson ("Simpson"). We affirm.

## Issues

The City presents several issues, which we consolidate and restate as:

I. Did Simpson lack standing to seek damages for the death of his daughter Lisa Simpson ("Lisa") under Indiana Code section 34–23–2–1, the Child Wrongful Death Act ("the Act")?

II. Was Lisa emancipated at the time of her death such that she did not qualify as Simpson's "child" within the meaning of the Act?

III. Should the trial court have granted the City's motion for summary judgment and motion for judgment on the evidence based on the City's allegation that Lisa's own negligence contributed to her death?

IV. Did the trial court err by refusing the City's proposed jury instructions regarding the sudden emergency doctrine, the duties of drivers using highways, and the duty of drivers to exercise reasonable care?

## Facts and Procedural History

The facts most favorable to the judgment indicate that at approximately 4:00 p.m. on September 28, 1997, Lisa was preparing to exit the parking lot of a Wal-Mart store in Terre Haute when she stopped her vehicle for the red light at the intersection of the parking lot exit and U.S. Highway 41. When the light turned green, she proceeded onto the highway. However, her vehicle was almost immediately struck broadside by a Terre Haute Fire Department ambulance that had run the red light on U.S. 41 at approximately 50 miles per hour. (R. 1017, 1104–06, 1143, 1180.) Lisa died shortly after she was extracted from her vehicle. A passenger in her vehicle was seriously injured.

On May 4, 1998, Simpson filed his Complaint in the Vigo County Superior Court against the City, James Likens ("Likens"), the driver of the ambulance, and the Indiana Department of Transportation ("INDOT"). Each of the defendants eventually moved for summary judgment, and the court heard their respective motions January 26, 2000. On January 27, 2000, the court entered judgment for INDOT, but declined to dismiss Simpson's negligence claims against Likens and the City.

The case proceeded to jury trial on June 5, 2000. The court dismissed Likens at the conclusion of Simpson's case. The City moved for judgment on the evidence at the conclusion of its case on the grounds that Simpson lacked standing under the Act because he failed to join Lisa's mother Sheila Simpson ("Sheila") as a party, that Lisa was not a "child" within the meaning of the statute, and that Lisa was contributorily negligent. The court denied this motion, and on June 8, 2000, the jury returned a verdict in the amount of $400,000.00 for Simpson. The court remitted the verdict to $300,000.00 consistent with the statutory cap under the Tort Claims Act.

On September 7, 2000, Simpson and Sheila filed a Stipulation with the trial court, advising the court that the two would split all proceeds of the award remaining after payment of expenses and fees, and that Sheila had no objection to her absence from the action. The City responded by filing its Objection on September 12, 2000, taking the position that Sheila's acquiescence in her absence was irrelevant to Simpson's standing to bring the action in the first place, and asking the trial court to strike the Stipulation. It appears that the trial court never ruled on the City's objection. The City now appeals the court's judgment.

### Discussion and Decision

#### A. Standing Under the Child Wrongful Death Act

##### 1. Standard of Review

■ The City contends that the court should have entered judgment on the evidence against Simpson pursuant to Trial Rule 50 because Simpson lacked standing under the Act to bring an action for Lisa's death. Trial Rule 50(A) of the Indiana Rules of Trial Procedure provides:

(A) Judgment on the Evidence—How Raised—Effect. Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding the verdict.

The granting of a motion for judgment on the evidence is a matter committed to the sound discretion of the trial court, and will be reversed only if the court has abused its discretion. *Smock Materials Handling Co. v. Kerr,* 719 N.E.2d 396, 401 (Ind.Ct. App.1999). Upon appeal, we employ the same standard as the trial court. *Id.* We consider the evidence in the light most favorable to the non-moving party. Judgment may be entered only if there is no substantial evidence or reasonable inferences to be drawn therefrom to support an essential element of the claim. *Dughaish ex rel. Dughaish v. Cobb,* 729 N.E.2d 159, 167 (Ind.Ct.App.2000), *trans. denied.*

##### 2. Analysis

■ The portion of the Act pertinent here provides that "[a]n action may be maintained under this section against the person whose wrongful act or omission caused the injury or death of a child ... by: ... the father and mother jointly, or *either of them by naming the other parent as a codefendant to answer as to his or her interest...."* IND.CODE § 34–23–2–1(b)(1) (emphasis added).[1] It appears that Simpson and Sheila were married at the time of Lisa's death, but divorced on March 17, 1998, approximately 6 months later. Simpson filed his Complaint for wrongful death on May 4, 1998, nearly two months after the divorce. Simpson, however, did not join Sheila as a plaintiff, or name her as a defendant to represent her interest in the action as plainly required by the Act.

According to the City, Simpson's failure to either join Sheila as a Plaintiff, or name her as a defendant, deprived him of standing to maintain his wrongful death action. No Indiana cases have directly addressed this issue. The City analogizes this case to those brought under the general Wrongful Death statute, which provides that only the personal representative of the decedent may bring a wrongful death action. *See* IND.CODE § 34–23–1–1. The City correctly points out that the courts of this state have repeatedly held that a plaintiff who is not the decedent's personal representative has no legal basis to bring a wrongful death claim under that statute, and that prosecution of the action by the

---

**1.** The Act also provides that an action for the wrongful death of a child may be maintained by "the person to whom custody of the child was awarded" in cases of "divorce or dissolution of marriage," IND.CODE § 34–23–2–1(b)(2), and by "a guardian, for the injury or death of a protected person." IND.CODE § 34–23–2–1(b)(3). Lisa was apparently not a "protected person" and neither Simpson nor Sheila was her guardian. Moreover, as noted below, custody was not an issue as Lisa's parents were not divorced until after her death. These provisions are therefore inapplicable here.

personal representative within the two year statutory period is a condition precedent to the existence of the wrongful death action itself. *See, e.g., Hosler ex rel. Hosler v. Caterpillar, Inc.,* 710 N.E.2d 193, 196–197 (Ind.Ct.App.1999), *trans. denied.* The City essentially asks us to apply the same reasoning and conclude that the Child Wrongful Death Act's parental joinder provision is analogous to the general Wrongful Death statute's requirement that actions be brought by the personal representative, and that the parental joinder provision similarly creates a condition precedent to the existence of the action and to standing.

■ While we agree that Simpson was clearly obligated under the Child Wrongful Death Act to join Sheila either as a plaintiff or as a defendant, we do not agree that his failure to do so deprived him of standing to seek damages for the death of his daughter under the Act. Unlike the general Wrongful Death statute, which specifically identifies the personal representative

as the only valid plaintiff to pursue a wrongful death claim, the Child Wrongful Death Act plainly identifies a deceased child's father *or* mother as an appropriate plaintiff, so long as the individual parent bringing the action joins the other parent as a plaintiff or as a defendant. The Act therefore conferred standing to recover for Lisa's death upon both Simpson and Sheila, subject to the requirement that the individual parent pursuing the action, here Simpson, joined Sheila as a party. In this sense, the Child Wrongful Death Act's parental joinder provision is analogous to the joinder provisions under Trial Rule 19, under which actions are subject to dismissal if an indispensable person needed for just adjudication is not joined in the action as a party.[2] As under Trial Rule 19, an individual parent asserting a claim under the Child Wrongful Death act, while having standing to maintain an action, must join the deceased child's other parent as a party or face dismissal of the action for failure to comply with the plain requirements of the statute. In this case,

**2.** Trial Rule 19 specifically provides as follows:

(A) **Persons to be joined if feasible.** A person who is subject to service of process shall be joined as a party in the action if:

(1) in his absence complete relief cannot be accorded among those already parties; or

(2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:

(a) as a practical matter impair or impede his ability to protect his interest, or

(b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant.

(B) **Determination by court whenever joinder not feasible.** Notwithstanding subdivision (A) of this rule when a person described

in subsection (1) or (2) thereof is not made a party, the court may treat the absent party as not indispensable and allow the action to proceed without him; or the court may treat such absent party as indispensable and dismiss the action if he is not subject to process. In determining whether or not a party is indispensable the court in its discretion and in equity and in good conscience shall consider the following factors:

(1) the extent to which a judgment rendered in the person's absence might be prejudicial to him or those already parties;

(2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;

(3) whether a judgment rendered in the person's absence will be adequate;

(4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

(C) **Pleading nonjoinder.** Nonjoinder under this rule may be raised by motion as provided in Rule 12(B)(7).

Simpson's action was subject to dismissal for his failure to join Sheila.

 Simpson argues that by failing to object to Sheila's non-joinder in a timely manner, the City has waived the issue. We agree. A party's failure to raise the issue of non-joinder of otherwise indispensable parties under Trial Rule 19 in a meaningful and timely manner generally results in waiver of that issue. *See, e.g., Coak v. Rebber,* 425 N.E.2d 197, 199 (Ind. Ct.App.1981) (holding that party who waited to seek joinder of party under Trial Rule 19 until after judgment waived issue); *Arnold v. Dirrim,* 398 N.E.2d 442, 448 (Ind.Ct.App.1979) (same). As we stated in *Ligon Specialized Hauler, Inc. v. Hott,* 179 Ind.App. 134, 384 N.E.2d 1071, 1076 (1979), "[w]e will not allow a party to sit idly by until appellate review before presenting appropriate motions for the joinder of additional parties." While some of these cases involve post-judgment objections for non-joinder, the court in *Ligon* held that a request for joinder made during final argument after the close of evidence, but before judgment, was still too late. *Id.* at 1077, n. 10.

 Similarly, we conclude that a party may waive its objection to non-joinder of a parent under the Child Wrongful Death Act by failing to raise the issue in a timely fashion. Here, the City did not question Sheila's absence until after the close of evidence at trial. The City, however, had been advised nearly two years earlier in Simpson's June 22, 1998 discovery responses that he had been married to Sheila from March 3, 1972 until March 17, 1998, and that their marriage had been dissolved in proceedings instituted in the Decatur County Circuit Court. The City's objection to Sheila's absence was not timely, and the City waived the issue.

### B. "Emancipation" Under the Child Wrongful Death Act

#### 1. Standard of Review

The City's motion for judgment on the evidence included the claim that Lisa was emancipated under common law and therefore not a "child" within the meaning of the Act. We accordingly review this claim under the standard discussed above, and may reverse only if there is no substantial evidence or reasonable inferences to be drawn therefrom establishing that Lisa was a child under the act at the time of her death.

#### 2. Analysis

 The Act defines a "child" as "an unmarried individual without dependents who is ... less than twenty (20) years of age ... or ... less than twenty-three (23) years of age and is enrolled in an institution of higher education or in a vocational school or program." IND.CODE § 34–23–2–1(a)(1) and (2). Lisa was, as the City concedes, a twenty-one year old college student at the time of her death, and was accordingly a "child" under the express terms of the act. There is no explicit requirement under the act that the deceased be "unemancipated" at common law to qualify as a "child."

The City points to the case of *Wallace v. Woods* (1971) 271 N.E.2d 487, 149 Ind. App. 257 for the proposition that a child's emancipation bars an action for that child's wrongful death. It is true that in *Wallace,* the Court of Appeals held that a parent could not maintain an action for the wrongful death of her son because that son was emancipated by virtue of his service in the military at the time of his death. *Id.* at 494. *See also, e.g., Childs v. Rayburn* (1976) 346 N.E.2d 655, 660, 169 Ind.App. 147 (noting that only the parent of an unemancipated child may maintain an action for his child's injury or death). How-

ever, *Wallace* and other cases supporting the City's proposition arose under a previous version of the Child Wrongful Death Act that did not define the term "child,"[3] and appear to have utilized the common law concept of "emancipation" to provide meaning to the term. In 1987, however, the Act was amended to include the present definition of child, which in effect constitutes the General Assembly's determination of who is emancipated, and who is not, for purposes of the Child Wrongful Death Act. The *Wallace* case upon which the City's relies, and others like it, is therefore no longer applicable. The Act clearly defines the term "child." Lisa was a child within the meaning of the Act, and the trial court did not err in denying the City's motion for judgment on the evidence.

### C. Contributory Negligence

#### 1. Standard of Review

The City argued in its motion for summary judgment and in its motion for judgment on the evidence that Lisa's contributory negligence barred Simpson's action as a matter of law. Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. Moreover, under the Trial Rule 50 standard, we may only disturb the court's denial of the City's motion for judgment if the evidence is without conflict and is susceptible to only one inference, in this case that Lisa was contributorily negligent. *See North-*

*ern Indiana Public Service Co. v. Sharp,* 732 N.E.2d 848, 856 (Ind.Ct.App.2000), *reh'g denied.*

#### 2. Analysis

■ As a governmental entity, the City was not subject to the fault apportionment scheme set out in the Comparative Fault Act. IND.CODE § 34–51–2–2. Thus, Simpson's action was subject to common law contributory negligence rules, and a finding of contributory negligence on the part of Lisa would have operated as a complete bar to Simpson's recovery regardless of the extent of the City's negligence. *See Nesvig v. Town of Porter,* 668 N.E.2d 1276, 1280 (Ind.Ct.App.1996). The City contended in its motion for summary judgment and its motion for judgment on the evidence that the undisputed evidence showed that Lisa was contributorily negligent as a matter of law for failing to yield the right of way to the oncoming ambulance, in violation of Indiana Code section 9–21–8–35, which provides:

(a) Upon the immediate approach of an authorized emergency vehicle, when the person who drives the authorized emergency vehicle is giving audible signal by siren or displaying alternately flashing red, red and white, or red and blue lights, a person who drives another vehicle shall do the following unless otherwise directed by a law enforcement officer:

(1) Yield the right-of-way.

---

3. The Act at that time read:
 Action for injury or death of child.—A father, or in case of his death, or desertion of his family, or imprisonment, the mother, or in case of divorce the person to whom custody of the child was awarded, may maintain an action for the injury or death of a child; and a guardian may maintain such action for the injury or death of his ward; in case of death of the person to whom custody of the child was awarded, a guardian shall be appointed to maintain an action for the injury or death of his ward. But when the action is brought by the guardian for an injury to his ward, the damages shall inure to the benefit of his ward.
 IND.CODE § 34–1–1–8 (1971), *amended,* P.L. 306–1987.

(2) Immediately drive to a position parallel to and as close as possible to the right-hand edge or curb of the highway clear of any intersection.

(3) Stop and remain in the position until the authorized emergency vehicle has passed.

The City concedes that the Court of Appeals addressed the nearly identical issue in *Clark v. Sterrett* (1966) 220 N.E.2d 779, 780, 141 Ind.App. 384, in which we noted that under the substantially similar predecessor of the above-quoted emergency vehicle statute, a motorist has no "absolute affirmative duty" to hear an emergency vehicle's siren. We accordingly determined in *Clark* that, in the absence of such an absolute duty, the question whether a motorist heard, or in the exercise of reasonable care should have heard an emergency vehicle's siren was a question of fact for the jury. *Id.* The City argues that the matter should never have gone to the jury in this case because the evidence was undisputed that Lisa should have seen and heard the ambulance's lights and sirens. The record does not support the City's position. Although several witnesses testified that the ambulance was using its lights and sirens immediately prior to the accident, and that these devices were adequate to warn nearby motorists of the presence of the ambulance, the passenger in Lisa's vehicle testified that he never heard the ambulance's siren, and did not see its flashing lights until Lisa's vehicle was already in the intersection. Given this factual dispute as to whether Lisa should have been aware of the ambulance, the trial court appropriately determined that the question of Lisa's alleged contributory negligence was for the jury to resolve.

### D. Jury Instructions

#### 1. Standard of Review

Instruction of the jury is left to the sound judgment of the trial court, and our review of a trial court's decisions in this regard is highly deferential: we will not disturb the court's judgment absent an abuse of discretion. *Smock Materials Handling Co.*, 719 N.E.2d at 402. A trial court abuses its discretion by refusing a tendered instruction only when: (1) the instruction correctly states the law, (2) the evidence supports the instruction, and (3) the substance of the charge is not covered by other instructions. *Id.* Further, errors in instruction are harmless and do not require reversal where the verdict would have been no different had the jury been properly instructed. *Id.*

#### 2. Analysis

##### a. Sudden Emergency

The sudden emergency doctrine recognizes that " 'a reasonable person innocently deprived of time to consider his actions does not always exercise the same accuracy of judgment as one who has had the opportunity for reflection.' " *Barnard v. Himes*, 719 N.E.2d 862, 869 (Ind. Ct.App.1999), *trans. denied, (quoting Sullivan v. Fairmont Homes, Inc.*, 543 N.E.2d 1130, 1137 (Ind.Ct.App.1989)). Although the sudden emergency doctrine is generally described as an affirmative defense, it does not act to excuse fault, but rather defines the conduct to be expected of a prudent person in an emergency situation. *See Compton v. Pletch*, 561 N.E.2d 803, 806 (Ind.Ct.App.1990), *adopted on transfer*, 580 N.E.2d 664 (Ind.1991). The City tendered the following instruction, which Simpson concedes is a correct statement of the law:

A person confronted with a sudden emergency, not of his own making and without sufficient time to deliberate, is not held to the same accuracy of judgment as one who had time to deliberate.

Accordingly, the person is not negligent if he exercises such care as an ordinarily prudent person would exercise when confronted with a similar emergency.

If you find from the evidence that a sudden emergency confronted the defendant and that he responded as an ordinarily prudent person would have when faced with the same or similar emergency, then you may not find the defendant negligent.

(R. 865.) The trial court refused the instruction.

■■■■ Each party to an action is entitled to have the jury instructed upon his particular theory. *Barnard,* 719 N.E.2d at 868. An instruction on sudden emergency is appropriate when there is evidence that (1) the actor seeking benefit of the defense did not, through his own negligence, create the sudden emergency, (2) the appearance of danger was so imminent that the actor was left with no time for deliberation, and (3) the actor's apprehension of the peril was reasonable. *Id.* at 869. The City contends that Likens, the driver of the ambulance, was faced with a sudden emergency not of his own making in that the traffic light under which he passed immediately prior to the accident turned from green to red unusually quickly.[4]

First, the City's defense at trial was not that the ambulance would have stopped if the traffic signal had not changed so quickly. Rather, the City's defense was that the ambulance driver exercised reasonable care under the circumstances when he pro-

ceeded through the intersection under a red light, and that the accident occurred because Lisa negligently entered the intersection in violation of her duty to yield the right of way to an oncoming emergency vehicle. Even if the City had pursued its traffic signal defense, the evidence presented at trial shows that the "emergency" that took the ambulance through the intersection under a red light was not sudden, and was created by the ambulance driver.

Simpson's expert estimated that Lisa's vehicle was traveling at approximately fifteen miles per hour at the time of the collision, and that it took her between four and five seconds to reach that speed. Thus, at least four to five seconds had elapsed between the time Lisa's light turned green (and the ambulance's light turned red) before the accident occurred. The expert stated that it takes an average motorist approximately three-quarters of a second to react to a stimulus like a red light and apply brakes. Further, the expert estimated that the ambulance would have traveled between 294 and 367 feet in the four to five seconds between the time the light changed and Lisa's vehicle reached fifteen miles per hour. The evidence accordingly indicates that the asserted appearance of danger presented by the quick traffic light was not so imminent that the ambulance driver was left with no time to deliberate. Rather, it appears from the evidence that the driver proceeded through the intersection under a red light of his own volition, an action the jury found negligent.[5] The court therefore did

---

4. The City does not argue, as it did below, that Lisa's entry into the intersection presented a sudden emergency.

5. The City notes that there was some testimony indicating that the ambulance was traveling more slowly than Simpson's expert estimated, and claims that this supports its contention that the quick red light presented a sudden emergency not of the driver's mak-

ing. We disagree. If the ambulance was driving as slowly as the City contends, the driver should have been able to bring his vehicle to a stop, or to at least slow it down to a less deadly speed, upon seeing the red light, and his failure to do so under those circumstances would still have resulted from his own actions and not from the quick traffic light.

not abuse its discretion in refusing the City's tendered instruction.

b. Pattern Instruction 19.01

 The City also tendered an instruction that read:

Every driver of a motor vehicle using a public highway has a duty to exercise the care of an ordinarily prudent person would use, under the same or like circumstances. The failure to exercise such care is negligence.

(R. 860.) The City contends that this instruction was necessary to advise the jury of Lisa's obligation to exercise reasonable care when driving. The substance of this instruction was covered by several others. The jury was instructed that "[i]f Lisa Simpson's negligence proximately contributed to her death, then the Plaintiff, Larry Simpson cannot recover even though the Defendant may have been negligent." (R. 898.) The jury was further instructed that "[c]ontributory negligence is the failure of a plaintiff to use reasonable care, ..." (R. 892), and that "[r]easonable or ordinary care, is such care as a reasonably careful and ordinarily prudent person would exercise under the same or similar circumstances." (R. 891.) The jury was also instructed that, pursuant to Indiana Code section 9–21–8–35, Lisa was obligated to yield the right of way to oncoming emergency vehicles giving an audible signal by siren and using its flashing lights. These instructions were more than adequate to apprise the jury of Lisa's obligation to exercise reasonable care under the circumstances involved in this case, and the court was not required to give the City's proposed instruction.

c. Duty of Drivers to Exercise Reasonable Care

Finally, the City claims that the trial court erred by refusing the following instruction:

It is the duty of every driver using the roadway to exercise reasonable and ordinary care. The use of reasonable and ordinary care includes the use of one's senses to see what can be seen and to hear what can be heard.

(R. 863.) This instruction was nearly identical to the previous one, and was also cumulative of other instructions given to the jury. The trial court was thus not obligated to give it to the jury.

### Conclusion

In sum, while Simpson's action was subject to dismissal for his failure to join Lisa's mother Sheila as a party, the City did not timely object to her absence and has waived the issue. Moreover, Lisa qualified as Simpson's "child" under the act. Finally, the court did not err by refusing the City's tendered jury instructions.

Affirmed.

FRIEDLANDER and MATTINGLY, JJ., concur.