Leo ALDANA, b/n/f Janette Aldana, Jennie Bell, b/n/f Avis Bell, Jorge Castillo, Jr., b/n/f Jorge Castillo, Daphne Espinoza, b/n/f Daphne Zaragoza, Crystal Fuentes, b/n/f Veronica Olvera, Kassandra Pezel, b/n/f Josefina Pezel, Jeremiah Reed, b/n/f Pauline Reed, Joseph Silvas, b/n/f Patricia Silvas, and Josefina Pezel, Individually, Appellants–Plaintiffs,

v.

SCHOOL CITY OF EAST CHICAGO and Earl Person, Appellees– Defendants.

No. 45A05–0110–CV–440.

Court of Appeals of Indiana.

June 19, 2002.

Sterrence M. Rubino, Steven J. Sersic, Kevin C. Smith, Rubino & Crosmer, Dyer, IN, Attorneys for Appellants.

Melanie D. Pennycuff, Bruce P. Clark & Associates, Munster, IN, Attorney for Appellees.

## OPINION

BARNES, Judge.

### Case Summary

Plaintiffs, who consist of nine schoolchildren and one adult, appeal the judgment entered following a jury verdict in favor of Defendants, School City of East Chicago ("the City") and Earl Person, in a personal injury negligence action. We reverse and remand.

### Issues

The issues before us are:

I. whether the trial court properly refused to instruct the jury on the doctrine of res ipsa loquitur; and

II. whether the trial court erred by instructing the jury on the sudden emergency doctrine.

### Facts

The facts most favorable to the verdict in this case are that on April 2, 1998, Person, a school bus driver for the City, agreed to transport a group of first graders and chaperones on a field trip. While traveling on the Lake/Porter County Line Road on the return trip, Person noticed that the right wheels of the bus had left

the pavement and gone onto the dirt shoulder. As he tried to bring those wheels back onto the pavement, the bus unexpectedly "jumped" and fishtailed into the opposite lane of the road, causing oncoming traffic to stop. Person eventually brought the bus back under control. The bus then stopped at a convenience store several minutes later at the urging of the chaperones. Person denied that the bus ever went up on two wheels. A State Trooper testified that holes and ruts in the road might have been a contributing cause of the incident. There was conflicting evidence concerning the nature and extent of the physical and psychological injuries, if any, suffered by the bus passengers.

Plaintiffs, all of whom were passengers on the bus, sued Defendants, seeking damages for physical injuries, medical expenses, and emotional distress. At trial, Plaintiffs presented evidence that the fishtailing of the bus caused schoolchildren to be thrown from their seats twice onto the floor and/or into the walls, other seats, and even the ceiling of the bus. Additionally, several witnesses testified that the bus went up on two wheels, although there was conflicting testimony as to which side of the bus became airborne. When Person regained control of the bus, several children were left underneath the bus seats crying. After the bus stopped, some of the children were transported to an emergency room for examination. Several of the children and their parents testified to experiencing emotional trauma following this incident. The State Trooper who testified that holes and ruts in the road may have contributed to the incident also testified that the weather that day was clear and he knew of no mechanical defects on the bus. He also indicated that the road was dry and not dangerous, and that he did not believe the holes and ruts were such that they would have caused a pru-

dent bus driver to lose control of the vehicle.

At the conclusion of the evidence, Plaintiffs requested the trial court to instruct the jury on the doctrine of res ipsa loquitur, claiming Person's negligence, and hence that of the City via respondeat superior, could be inferred under the facts of the case. The trial court declined to give the instruction. It also instructed the jury on the sudden emergency doctrine, as proffered by Defendants over Plaintiffs' objection. The jury returned a verdict in favor of Defendants, upon which the trial court entered judgment. Plaintiffs now appeal.

### Analysis

#### I. *Res Ipsa Loquitur*

 Plaintiffs first challenge the trial court's refusal to instruct the jury on the doctrine of res ipsa loquitur. We review a trial court's refusal to tender a requested instruction for an abuse of discretion. *City of Terre Haute v. Simpson*, 746 N.E.2d 359, 367 (Ind.Ct.App.2001), *trans. denied*. A trial court abuses its discretion by refusing a tendered instruction if: (1) the instruction correctly states the law; (2) the evidence supports the instruction; and (3) the substance of the charge is not covered by other instructions. *Id.* Additionally, refusal of a requested jury instruction is reversible error only if there is a reasonable probability that substantial rights of the complaining party have been adversely affected. *Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 944 (Ind.2001).

Plaintiffs' tendered res ipsa loquitur instruction stated:

In this case, if you find that:

First: The plaintiffs were damaged as a proximate result of the School City of East Chicago school bus being out of control;

Second: The school bus was under the exclusive control of the School City of East Chicago and its driver, Earl Person; and

Third: The school bus being out of control would not happen unless the defendant and/or its driver Earl Person were negligent.

Then you may infer the defendants were negligent and you may consider this inference with all the other evidence in the case in arriving at your verdict.

Appellant's Br. pp. 5–6. This instruction is derived from Indiana Pattern Civil Instruction 9.13 and Defendants do not suggest that it does not correctly state the theory of res ipsa loquitur. We then proceed to the second part of our analysis, namely whether the evidence in this case supported the giving of the instruction.

We have described the doctrine of res ipsa loquitur as:

a rule of evidence that allows a jury to draw an inference of negligence under certain factual circumstances. The doctrine operates on the premise that negligence, like any other fact or condition, may be proved by circumstantial evidence. Although negligence may not be inferred from the mere fact that an injury occurred, it may be inferred from the circumstances surrounding the injury.

The central question involved in the use of the res ipsa loquitur doctrine is whether the incident more probably resulted from the defendant's negligence rather than from some other cause. The doctrine may be applied when the plaintiff establishes: 1) that the injuring instrumentality was within the exclusive management and control of the defendant ...; and, 2) the accident is of the type that does not ordinarily happen if those who have the management and control exercise proper care. A plaintiff seeking to invoke the res ipsa loquitur

doctrine may establish that the incident was more probably the result of negligence by relying on common sense and experience.

*Deuitch v. Fleming,* 746 N.E.2d 993, 999 (Ind.Ct.App.2001), *trans. denied* (quoting *K–Mart Corp. v. Gipson,* 563 N.E.2d 667, 669 (Ind.Ct.App.1990), *trans. denied* ). When Plaintiffs tendered their instruction, Defendants argued and the trial court concluded that Plaintiffs could not submit their theory of res ipsa loquitur to the jury because "[t]he road, which was part of the instrumentality, was not within the control of the City of East Chicago or its school bus driver." Tr. p. 367. Although there was some evidence that holes or ruts in the road may have contributed to the incident at issue, we conclude the evidence, when viewed most favorably to Plaintiffs, required the trial court to give the tendered res ipsa loquitur instruction.

█ Under the doctrine of res ipsa loquitur, it is not necessary for a plaintiff to exclude every possibility other than the defendant's negligence as a cause for the plaintiff's injury. *Gold v. Ishak,* 720 N.E.2d 1175, 1182 (Ind.Ct.App.1999), *trans. denied.* All that is needed is evidence from which reasonable persons could say that on the whole it is more likely that there was negligence associated with the cause of an event than that there was not. *Sharp v. LaBrec, Inc.,* 642 N.E.2d 990, 993 (Ind.Ct.App.1994), *trans. denied.* To prove the "exclusive control" requirement of res ipsa loquitur, the plaintiff is simply required to show *either* that a specific instrument caused the injury and that the defendant had control over that instrument *or* that any reasonably probable causes for the injury were under the control of the defendant. *Slease v. Hughbanks,* 684 N.E.2d 496, 499 (Ind.Ct.App. 1997). At a minimum, the plaintiff is required to point to an instrument in the

control of the defendant that was a probable cause of his or her injury. *See id.* at 500.

This court previously stated:

When presented with a request for a res ipsa loquitur instruction, the trial court's duty is to determine whether the plaintiff produced evidence from which the jury could reasonably conclude the existence of the underlying elements of exclusive control and probability of negligence. This is a sufficiency question. There only need be evidence and reasonable inferences therefrom, which, when viewed in the light most favorable to the proponent, would support the [theory] contained in the instruction. If there is no such evidence, the instruction is properly refused. On the other hand, if there is evidence from which a jury could reasonably find the existence of the elements, then the conditional res ipsa loquitur instruction, which merely tells the jury that if they do find the existence of these elements then they may draw the inference of negligence, must be given.

■ *Sharp,* 642 N.E.2d at 993 (internal citations omitted). We further note that the quantum of evidence necessary for the giving of an instruction "is deliberately set at a relatively low level in order to assure the right of parties to have the trier of fact determine factual disputes thus preserving the constitutional rights to a trial by jury." *Shull v. B.F. Goodrich Co.,* 477 N.E.2d 924, 927–28 (Ind.Ct.App.1985), *trans. denied.*

■ Viewing the evidence in the light most favorable to Plaintiffs as the proponent of the res ipsa loquitur instruction supports the following description of events: Person lost control of the City's school bus on a clear day while driving on a dry county road described as not dangerous. This loss of control caused the bus to careen from one side of the road and back to the other side, at one point tilting up on two wheels and causing oncoming traffic to stop. No other vehicle was involved in this incident. The loss of control tossed many schoolchildren and adults about the inside of the bus, such that several of them were underneath the bus seats when Person regained control of the bus. Indiana State Trooper James Burkhardt, who is a specialist with respect to common carriers, including school buses, testified that he found nothing mechanically wrong with the bus that might have caused Person to lose control of it.

Most importantly for the res ipsa loquitur issue, Burkhardt testified as follows with respect to the condition of the road:

[Defense Counsel]: Does that mean, in your opinion, as a result of the investigation, your investigation of this accident, that it was caused by holes or ruts in the surface of the road?

[Burkhardt]: Contributing to this? Yes.

\* \* \* \* \*

[Burkhardt]: There were holes on the road. Did I see the bus strike the holes? No. Were they large holes? No.

[Plaintiff Counsel]: Okay. So there were some small holes in the road?

[Burkhardt]: Yes.

\* \* \* \* \*

[Plaintiff Counsel]: Was there anything about these small holes different than the holes that every one of us see on the road every single day?

[Burkhardt]: No, sir.

\* \* \* \* \*

[Plaintiff Counsel]: Officer, again, these holes throughout the road that are holes like we see every day, were these holes

sufficient to cause a prudent, careful, attentive bus driver to lose control of his bus?

\* \* \* \* \*

[Burkhardt]: In my opinion, no.

[Plaintiff Counsel]: Did you see anything on this roadway that in your opinion could cause somebody who's supposed to be a safe bus driver to lose control?

\* \* \* \* \*

[Burkhardt]: In my opinion, no.

Tr. pp. 62–66.

We must look at the totality of Burkhardt's testimony regarding the road, in addition to the other evidence, in a light most favorable to Plaintiffs. *See Sharp*, 642 N.E.2d at 993. In doing so, we are satisfied that the requisites for a res ipsa loquitur jury instruction were met.

First, we accept the proposition that a jury could reasonably infer, based on its common knowledge and experience, that a school bus driver should not lose control of his or her vehicle to the extent Person did, especially on a clear, dry spring day. As for the "exclusive control" requirement, we reiterate that a plaintiff need only demonstrate that *a* specific instrument was a probable cause of the injury and that the defendant had exclusive control over that instrument at the time of the alleged negligent act. *See Slease*, 684 N.E.2d at 499–500. To hold that any conceivable contributing cause to a plaintiff's injury is an "instrumentality" that must be shown to have been within the defendant's "exclusive control," for purposes of invoking res ipsa loquitur, would eviscerate the principle of Indiana law that a plaintiff need not exclude every other possibility other than the defendant's negligence as a cause for the injury. *See Gold*, 720 N.E.2d at 1182. Such a holding also would be inconsistent with the principle that the defendant's coming forward with an alternate explanation for an injury does not necessarily negate a claim of res ipsa loquitur. *See New York, Chicago & St. Louis R. Co. v. Henderson*, 237 Ind. 456, 466, 146 N.E.2d 531, 537–38 (1957). We therefore conclude that because Plaintiffs presented evidence that Defendants had "exclusive control" of a key injuring instrumentality—i.e., the bus—at the time of the alleged negligence—i.e., the mishandling of the bus—they were not required to demonstrate Defendants' "exclusive control" over all potential contributing causes of the incident. *See id.* at 473, 146 N.E.2d at 541 (holding inference of negligence under res ipsa loquitur was still permissible although defendant presented evidence that plaintiff may have been contributorily negligent). This is particularly true in light of Trooper Burkhardt's testimony, from which it could be inferred that although holes and ruts in the road may have contributed to this incident, it still would not have occurred in the absence of negligence in the driving of the bus. The jury should have been instructed that it could have inferred negligence on Defendants' part, as Plaintiffs presented sufficient evidence to invoke the doctrine of res ipsa loquitur.

There is little case law that is factually analogous to the case before us. However, our supreme court's decision in *Merriman v. Kraft*, 253 Ind. 58, 249 N.E.2d 485 (1969), is precedent that directly supports our decision today. There, the court concluded that the doctrine of res ipsa loquitur properly applies when a car leaves the street and subsequently injures a pedestrian and it is shown that the instrumentality causing the injury, i.e. the car, was under the defendant-driver's exclusive control. *Id.* at 63, 249 N.E.2d at 488. Res ipsa loquitur was applicable as against the defendant-driver, even though the plaintiff

had alternatively alleged that the accident was caused by a tire blowout and had sued the tire manufacturer. *Id.* at 64–65, 249 N.E.2d at 488–89. Specifically, the court noted that there was evidence presented that if the tire had blown out while defendant-driver was driving at the speed she said she was traveling, it should not have caused her to lose control of the car. *Id.*, 249 N.E.2d at 489. In the present case the crucial instrumentality is the school bus, which directly caused Plaintiffs' alleged injuries and which was under the exclusive control of Person and thus his principal, the City. That Defendants presented an explanation or possible cause for this incident aside from Person's negligence, namely the condition of the road, does not automatically remove this case from the realm of res ipsa loquitur, particularly in light of the evidence that this alleged cause should not have caused a prudent driver to lose control of a school bus, just as there was evidence in *Merriman* that the tire blowout should not have caused the driver to lose control of her vehicle.

We also observe that the Supreme Court of Idaho has addressed an almost identical factual scenario as the one in the case before us. In *Blackburn v. Boise School Bus Co.*, 95 Idaho 323, 508 P.2d 553 (1973), a child was injured when the rear wheels of a school bus encountered a severe bump, causing the child and at least two others to be thrown up to the ceiling of the bus. The court concluded the plaintiff was entitled to submit the case against the bus driver and bus company to the jury under the theory of res ipsa loquitur. *Id.* at 325, 508 P.2d at 556. The defendants in the case made an argument very similar to the one Person and the City make today, namely, "that they did not have control over the instrumentality [the bumpy road] which caused the injury." The court rejected this argument:

> Whether or not the defective roadbed was in fact the product of the highway department's negligent construction, as suggested by the [defendants], it was the [defendants] who had exclusive control of the instrumentality—i.e., the bus—which caused the injury. Even assuming arguendo that the highway department may have been negligent in maintaining a newly constructed roadway, we note that the ... driver, in exercising his control over the bus, may have been negligent in failing to slow down as he approached a dangerous defect. Although the defective roadbed was admittedly not under the control of the [defendants], the bus and the manner in which it negotiated the defective roadway was clearly under [their] control.

*Id.* (internal citation omitted).[1] This reasoning is consistent with Indiana's view of res ipsa loquitur, namely that the existence of other possible contributing causes for an accident aside from the defendant's negligence does not necessarily mean the doctrine is inapplicable. Even if we were to assume that the road was negligently constructed or maintained by a third party and that it contributed to this incident, the jury still could have inferred negligence on Person's part in the manner in which he negotiated the road based upon Trooper Burkhardt's testimony.

---

1. The court also noted that there was no proof as to precisely what caused the child to be ejected from her bus seat "and consequently it cannot be stated with any certainty that the object encountered by the bus was in fact the product of third party negligence." *Black-* *burn,* 95 Idaho at 325–26, 508 P.2d at 555–56. Similarly, the evidence most favorable to Plaintiffs in this case is that the road was not in such a condition that it would have caused a prudent driver to lose control of the bus.

The court also addressed the second part of the res ipsa loquitur test and rejected the defendants' argument that children frequently bounce or fall from bus seats and that common knowledge and experience did not justify the inference that the accident would not have occurred in the absence of negligence. *Id.* at 326, 508 P.2d at 556. It concluded "when it appears that the injury was resultant from a severe jerk not incident to the normal operation of the conveyance, the application of res ipsa loquitur is proper." *Id.* (quoting *Straley v. Idaho Nuclear Corp.*, 94 Idaho 917, 922, 500 P.2d 218, 223 (1972)). We likewise conclude that a school bus lurching from one side of the road to the other and back again, with sufficient force to leave several children under the bus seats, is not an event that should be considered "incident to the normal operation of the conveyance." Hence, a jury could reasonably infer from its common knowledge and experience that such an event would not have occurred in the absence of negligence.

We hold that the evidence, when viewed in the light most favorable to Plaintiffs, supported the giving of a res ipsa loquitur instruction. The next step in our analysis is whether the substance of the proffered instruction was covered by other instructions that were given. Res ipsa loquitur is "a very particularized theory in the law of negligence" and it is clear that the other instructions failed to advise the jury that it could infer negligence in the absence of

direct evidence of specific negligent acts on Person's part. *See Shull*, 477 N.E.2d at 933. The trial court, therefore, abused its discretion by not tendering Plaintiffs' requested instruction. Furthermore, precisely because of the lack of direct evidence of negligence in this case, which fact defense counsel alluded to during closing arguments,[2] we conclude Plaintiffs' substantial rights were adversely affected by the failure to instruct the jury on the doctrine of res ipsa loquitur. It is not possible to positively conclude that the verdict in this case would have been no different if the jury had been properly instructed. Therefore, we must reverse the judgment in favor of Defendants and remand this cause for further proceedings.[3]

## II. Sudden Emergency Doctrine

Because the issue may arise again in a new trial, we will address whether the trial court erred by instructing the jury on the sudden emergency defense. As with a trial court's refusal to give an instruction, a claim of error based on the giving of an instruction is reviewed for an abuse of discretion. *Kelley v. Watson*, 677 N.E.2d 1053, 1056 (Ind.Ct.App. 1997). An instruction given to the jury must be a correct statement of the law, be applicable to the evidence adduced at trial, and be relevant to the issues the jury must decide in reaching its verdict. *Id.*

The trial court instructed the jury as follows:

---

**2.** "The Plaintiff [sic] has not showed you anything to determine that Earl Person did anything wrong.... They haven't proved how it happened .... if there are circumstances that were under our control, the Plaintiff [sic] has the burden of proving what it was and how we did something wrong." Tr. pp. 424, 426, 439.

**3.** The conditional res ipsa loquitur instruction requested by Plaintiffs leaves the jury the option of finding Defendants negligent or not,

and the facts of this case do not require a finding of negligence. Additionally, res ipsa loquitur only addresses the question of whether Defendants were negligent, or more precisely whether they breached their duty of reasonable care to Plaintiffs; it does not address whether this breach proximately resulted in compensable injuries to Plaintiffs. *See Henderson*, 237 Ind. at 472–73, 146 N.E.2d at 541.

A person confronted with a sudden emergency, not of his own making and without sufficient time to deliberate, is not to be held to the same accuracy of judgment as one who had time to deliberate. Accordingly, the person is not negligent if he exercises such care as an ordinarily prudent person would exercise when confronted with a similar emergency.

If you find from the evidence that a sudden emergency confronted the Defendant, Earl Person, and that he responded as an ordinarily prudent person would have when faced with the same or similar emergency, then you may not find the Defendants negligent.

Tr. pp. 446–47. Plaintiffs' challenge to this instruction is whether there was sufficient evidence introduced to support giving it. Again, there only need be evidence and reasonable inferences therefrom, which, when viewed in the light most favorable to the proponent, would support a jury verdict on the theory contained in the instruction. *Shull*, 477 N.E.2d at 927–28. Thus, we must now view the evidence in this case in a light most favorable to Defendants, or in a completely different light than we viewed it in the previous portion of this opinion.

▇▇▇▇ Each party to an action is entitled to have the jury instructed upon his particular theory of the case. *Barnard v. Himes*, 719 N.E.2d 862, 868 (Ind.Ct.App. 1999), *trans. denied.* The sudden emergency doctrine is an affirmative defense and the trial court has a duty to instruct the jury on this defense if the evidence presented at trial supports the instruction. *Id.* The sudden emergency doctrine recognizes that a reasonable person innocently deprived of time to consider his actions does not always exercise the same accuracy of judgment as one who has had the opportunity for reflection. *Id.* at 869

(quoting *Sullivan v. Fairmont Homes*, 543 N.E.2d 1130, 1137 (Ind.Ct.App.1989), *trans. denied* ). The three factual prerequisites to an instruction on sudden emergency are: 1) the actor must not have created or brought about the emergency through his own negligence; 2) the danger or peril confronting the actor must appear to be so imminent as to leave no time for deliberation; and 3) the actor's apprehension of the peril must itself be reasonable. *Id.*

▇▇▇▇ Defendants assert that the "sudden emergency" which caused Person to take corrective driving measures, which in turn caused the bus to fishtail across the road, was a sudden pulling of the bus to the right, causing its right side to leave the road. The road on which the incident occurred was narrow with dirt shoulders that had open ditches on either side. It would have been reasonable for Person to perceive that a failure to correct the moving bus quickly, with little or no time for deliberation, could have caused the bus to overturn in a ditch, potentially causing serious harm to his passengers. The last two prerequisites for a sudden emergency instruction, therefore, were satisfied.

The real issue in this case is whether there was sufficient evidence that this particular "sudden emergency" was not brought about by Person's own negligence. Person testified at trial partially as follows:

Q: What happened when you were driving?

A: Okay. Well, as I was going, it felt like the right wheel was kind of going over to the right for some reason, and with a fraction, I went to correct that, and seemed like the wheel just kept going, and I continued to correct the problem. But all of a sudden, it seems like with a fraction as I went to turn— it's not to turn, but as—with a fraction, I

was going to steer the bus back into the pavement, because it was going like if the wheel was getting caught on something. So, as I went to turn it, the bus just jumped.

Q: Was your right wheel off the roadway and into the dirt?

A: Well—well, the right wheel was like—it was like caught into the dirt, and it seem—it seems like when the wheel came—came up to get on the pavement, the bus just took off.

Tr. p. 262.

It is undeniably a matter of dispute in this case whether the alleged initial drift of the bus off the right shoulder of the road, which precipitated the corrective action that tossed the children about the bus, resulted from Person's own carelessness or from a condition of the road that he could not have reasonably anticipated. The facts are unclear at best concerning this issue. That highlights, however, why the trial court did not abuse its discretion by instructing the jury on the sudden emergency doctrine. It is the exclusive province of the jury to sift through evidence, and in cases where such evidence might permit several reasonable yet conflicting inferences, to decide which inference is the most reasonable. Here, the jury could have reasonably inferred that the bus partially leaving the road occurred through no fault of Person's, but because of the condition of the road. It would be inequitable to hold, as we previously did, that Plaintiffs were entitled to have the jury instructed that negligence could be inferred in this case, but preclude Defendants from arguing the possibility of an opposite inference, or the existence of an emergency not resulting from Person's negligence.

Even if we were to assume that the evidence was insufficient to support the giving of an instruction on the sudden emergency doctrine, we would con-clude that Plaintiffs' substantial rights were not adversely affected, given the totality of the instructions. The jury was instructed that Defendants had the burden of proving the existence of a sudden emergency. It was also instructed:

A sudden emergency does not relieve a motorist of his duty to maintain a proper lookout while operating a vehicle as a reasonably prudent person would do in the same or similar circumstances. The duty to keep a lookout is imposed upon a motorist so that he may become aware of dangerous situations and conditions to enable him to take appropriate precautionary measures to avoid injury.

Tr. p. 447. Additionally, the jury was instructed, "A motorist on the highway has a duty to maintain his automobile under reasonable control." Tr. p. 446. Jury instructions must be considered not individually, but as a whole. *Kostidis v. General Cinema Corp. of Indiana*, 754 N.E.2d 563, 570 (Ind.Ct.App.2001), *trans. denied* (2002). These three instructions sufficiently removed any unduly prejudicial impact that an improper sudden emergency instruction might have had, in that the jury was clearly advised that Defendants could not take advantage of the sudden emergency defense if they failed to prove that such an emergency existed or if Person failed to keep an adequate lookout for hazards on the road, such as holes and ruts in this case. If we had not already reversed the judgment in this case, we would not find reversible error in the giving of the sudden emergency instruction because of the totality of the evidence presented and instructions given in this case.

### Conclusion

The trial court committed reversible error by not instructing the jury on the theory of res ipsa loquitur because there was sufficient evidence to support such an

instruction when viewing the evidence most favorably to Plaintiffs. However, the trial court did not err by instructing the jury on the sudden emergency doctrine, should the issue arise again in a new trial.

Reversed and remanded.

KIRSCH, J., concurs.

MATHIAS, J., concurs with separate opinion.

MATHIAS, Judge, concurring.

I concur with the reasoning and result reached by the majority, but I write separately to emphasize that application of the doctrine of res ipsa loquitur in cases involving injury arising from motor vehicle accidents has been and will continue to be proper only in unusual cases. In those motor vehicle cases in which the doctrine of res ipsa loquitur has been raised, our courts have generally held that it does not apply. *See e.g. Haidri v. Egolf,* 430 N.E.2d 429, 432 (Ind.Ct.App.1982); *Dimmick v. Follis,* 123 Ind.App. 701, 706–07, 111 N.E.2d 486, 489 (1953).

However, under the unique single vehicle incident at issue, the evidence presented at trial revealed that any reasonably probable, proximate cause of the alleged injuries was under the control of the bus driver. Therefore, I am constrained to agree that the trial court abused its discretion when it refused to instruct the jury on the doctrine of res ipsa loquitur.