ATTORNEYS FOR APPELLANTS
Robert E. Lehman
Indianapolis, Indiana

Jeffrey A. Cooke
Lafayette, Indiana

ATTORNEY FOR APPELLEE
Thomas D. Collignon
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 49S02-0512-CV-692

ANN WILLIS AND JEFF WILLIS,

*Appellants (Plaintiffs below),*

v.

CHRISTOPHER WESTERFIELD,

*Appellee (Defendant below).*

Appeal from the Marion Superior Court, No. 49D03-9901-CT-000013
The Honorable Patrick L. McCarty, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-0211-CV-930

**January 5, 2006**

**Boehm, Justice.**

We hold that the common law sudden emergency doctrine is not an affirmative defense within the meaning of Indiana Trial Rule 8(C) that requires affirmative defenses to be pleaded in a defendant's answer. We also hold that in cases where the defendant seeks a failure to mitigate damages instruction based on a plaintiff's failure to follow a treating doctor's recommendations, whether expert medical opinion testimony is required is to be determined on a case-by-case basis.

**Factual and Procedural Background**

On May 8, 1996, Christopher Westerfield rear-ended Ann Willis' van as it was stopped at a red light. Westerfield told the officer taking the accident report that he was unable to stop in time to avoid striking Willis' vehicle. Two and one-half years after the collision, Westerfield testified in a deposition that Ann Willis suddenly and without warning changed lanes and applied her brakes at the intersection and that he was unable to stop his vehicle before it struck Willis' vehicle because of wet pavement and Willis' quick lane change.

In December 1997, Ann and Jeff Willis filed their complaint for damages against Westerfield. Westerfield initially filed an answer in which he pleaded contributory negligence as an affirmative defense. He later amended his answer to replace his contributory negligence defense with a request for allocation of fault pursuant to Indiana's Comparative Fault Act. Neither the answer nor the amended answer mentioned the sudden emergency doctrine.

At trial, the court admitted the entire video-taped deposition of Ann Willis's treating physician, Dr. Robert K. Silbert, after denying Willis' motion to strike the portions of Westerfield's cross-examination of Dr. Silbert that referred to Ann's pre-existing conditions, subsequent conditions, or conditions unrelated to her collision injuries. On direct-examination, Dr. Silbert's deposition included his opinion that Ann did nothing after the collision to aggravate or worsen her injuries. On cross-examination, Dr. Silbert testified that Ann had failed to pursue recommended physical therapy and "in that particular condition she didn't help herself." Westerfield relied on his cross-examination of Dr. Silbert and did not call his own medical expert.

At the close of evidence, Westerfield tendered jury instructions on the sudden emergency doctrine, the affirmative defense of failure to mitigate damages, and allocation of fault under Indiana's Comparative Fault Act. The Willises objected to the sudden emergency instruction on the ground that Westerfield had waived that defense by failing to raise it in his responsive pleadings. The trial court overruled the objection and gave all three instructions.

Following a three day trial, the jury returned a verdict in favor of the Willises, awarding them $5,000 in compensatory damages without regard to fault. Based on a finding that Ann was

fifty percent at fault, the $5,000 verdict was reduced to $2,500 in accordance with Indiana's Comparative Fault Act.

The Willises appealed seeking a new trial as to damages only. They raised four grounds. First, they asserted the trial court erred in instructing the jury on the sudden emergency doctrine because Westerfield failed to raise the doctrine in his pleadings. Second, they asserted the trial court erred in instructing the jury on failure to mitigate damages because Westerfield failed to present medical expert testimony supporting that defense. Third, they asserted the trial court erred in denying their motion to strike portions of Westerfield's cross-examination of Dr. Silbert. Fourth, they alleged the trial court erred in giving an instruction on allocation of fault under Indiana's Comparative Fault Act. They contended that Westerfield's amended answer removing contributory negligence as a defense withdrew contributory negligence as an issue in the case and thereby eliminated any issue of fault by Willis.

The Court of Appeals initially affirmed the trial court. Willis v. Westerfield, 803 N.E.2d 1147, 1149 (Ind. Ct. App. 2004). It held that the trial court had erred in instructing on the sudden emergency doctrine because sudden emergency is an affirmative defense that Westerfield had waived by failing to include it in his pleadings. Id. at 1153. However, the Court of Appeals found that the instruction had no effect on the verdict and therefore the error was harmless.[1] Additionally, the Court of Appeals found that expert testimony was not required to establish failure to mitigate damages and therefore the trial court did not err by instructing the jury on that defense even though Westerfield had presented no expert testimony supporting it. Id. at 1155. The Court of Appeals further held that the Willises had waived any claim based on failure to redact portions of Dr. Silbert's deposition by failing to include the deposition in the record. Id. Finally, the Court of Appeals found no error in giving an instruction on allocation of fault because Westerfield had not conceded complete responsibility for the collision by withdrawing contributory negligence. Id. at 1151.

---

[1] The trial court's sudden emergency instruction directed the jury that it "may not find the Defendant negligent" if it found Westerfield was confronted with a sudden emergency and responded as an ordinarily prudent person. Because the jury found Westerfield negligent, the Court of Appeals concluded "that the jury did not predicate its verdict on the erroneous instruction." Willis, 803 N.E.2d at 1154.

3

On rehearing, the Court of Appeals reconsidered its view of the need for expert medical opinion testimony on the defense of failure to mitigate damages and held that an instruction on that issue was error. Willis v. Westerfield, 817 N.E.2d 672, 673 (Ind. Ct. App. 2004). The Court of Appeals vacated the trial court's damages award and remanded for a new trial on the issue of damages only. Id. The Court of Appeals affirmed its initial decision in all other respects, and also provided additional guidance on the scope of cross-examination of the Willises' expert. Id. at 673-75.

## I. Sudden Emergency Doctrine

In a negligence cause of action, the sudden emergency doctrine is an application of the general requirement that one's conduct conform to the standard of a reasonable person. The emergency is simply one of the circumstances to be considered in forming a judgment about an actor's fault.[2] The doctrine was developed by the courts to recognize that a person confronted with sudden or unexpected circumstances calling for immediate action is not expected to exercise the judgment of one acting under normal circumstances. See W.P. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts § 33 at 196 (5th ed. 1984). The basis of the doctrine is that "the actor is left no time for adequate thought, or is reasonably so disturbed or excited that the actor cannot weigh alternative courses of action, and must make a speedy decision, based very largely upon impulse or guess. Under such conditions, the actor cannot reasonably be held to the same accuracy of judgment or conduct as one who has had full opportunity to reflect, even though it later appears that the actor made the wrong decision, one which no reasonable person could possibly have made after due deliberation." Id. In Indiana, a defendant seeking a sudden emergency instruction must show that three factual prerequisites have been satisfied: 1) the defendant must not have created or brought about the emergency through his own negligence; 2) the danger or peril confronting the defendant must appear to be so imminent as to leave no time for deliberation; and 3) the defendant's apprehension of the peril

---

[2] See, e.g., Regenstreif v. Phelps, 142 S.W.3d 1, 5 (Ky. 2004) ("The sudden emergency doctrine is merely an expression of the reasonably prudent person standard of care. It expresses the notion that the law requires no more from an actor than is reasonable to expect in the event of an emergency."); Kreidt v. Burlington N. R.R., 615 N.W.2d 153, 156 (N.D. 2000) ("The sudden emergency doctrine is not so much a doctrine as an illustration of how negligence law is applied in a specific situation.").

4

must itself be reasonable. Sullivan v. Fairmont Homes, Inc., 543 N.E.2d 1130, 1137 (Ind. Ct. App. 1989), trans. denied.

Indiana Trial Rule 8(C) does not specifically refer to sudden emergency. It provides that "A responsive pleading shall set forth affirmatively and carry the burden of proving: [list of defenses] and any other matter constituting an avoidance, matter of abatement, or affirmative defense." Pursuant to this Rule, a party seeking the benefit of an affirmative defense must raise and specifically plead that defense or it is waived. Freedom Express, Inc. v. Merch. Warehouse Co., Inc., 647 N.E.2d 648, 651 (Ind. Ct. App. 1995); City of Hammond v. N. Ind. Pub. Serv. Co., 506 N.E.2d 49, 51 (Ind. Ct. App. 1987), trans. denied; Piskorowski v. Shell Oil Co., 403 N.E.2d 838, 847 (Ind. Ct. App. 1980), trans. denied. The list of affirmative defenses contained in the Rule is not exhaustive. Paint Shuttle, Inc. v. Continental Cas. Co., 733 N.E.2d 513, 524 (Ind. Ct. App. 2000), trans. denied. The Court of Appeals held that the trial court erred in giving a sudden emergency instruction. It reached this result based on its view that sudden emergency is an affirmative defense within the meaning of Indiana Trial Rule 8(C), and therefore was waived when not raised in Westerfield's responsive pleadings. Willis, 803 N.E.2d at 1153.

Some Indiana decisions have described the sudden emergency doctrine as an affirmative defense.[3] However, no case has found this defense waived pursuant to Trial Rule 8(C) for failure to plead it. The Court of Appeals observed that these references to sudden emergency as an affirmative defense may have been the result of "muddied language," and noted that no case addressed whether the proponent must include sudden emergency in a responsive pleading or risk waiving it. Willis, 803 N.E.2d at 1152-53. Whether a defense is affirmative "depends upon whether it controverts an element of a plaintiff's prima facie case or raises matters outside the scope of the prima facie case." Paint Shuttle, 733 N.E.2d at 524 (citing Molargik v. W. Enter., Inc., 605 N.E.2d 1197, 1199 (Ind. Ct. App. 1993)). An affirmative defense is a defense "upon

---

[3] In Evans v. Palmeter, 521 N.E.2d 316, 317 (Ind. 1988), this Court reviewed a claim that a trial court gave a sudden emergency instruction based on insufficient evidence. In dicta, this Court stated that "the sudden emergency doctrine is an affirmative defense." See also Aldana v. Sch. City of E. Chicago, 769 N.E.2d 1201, 1210 (Ind. Ct. App. 2002), trans. denied ("The sudden emergency doctrine is an affirmative defense and the trial court has a duty to instruct the jury on this defense if the evidence presented at trial supports the instruction."); Frito-Lay, Inc. v. Cloud, 569 N.E.2d 983, 987 (Ind. Ct. App. 1991), trans. denied ("The sudden emergency doctrine is an affirmative defense, and the trial court has the duty to instruct the jury concerning the defense if there is any evidence to support its application.").

which the proponent bears the burden of proof and which, in effect, admits the essential allegations of the complaint but asserts additional matter barring relief." Paint Shuttle, 733 N.E.2d at 524 (quoting Rice v. Grant County Bd. of Comm'rs, 472 N.E.2d 213, 214 (Ind. Ct. App. 1984), trans. denied). Sudden emergency does not assert a matter outside the allegations of the plaintiff's complaint. The Court of Appeals correctly noted that the proponent of the sudden emergency doctrine bears the burden of proof. But this does not in itself render the sudden emergency doctrine an affirmative defense. Otherwise stated, the doctrine does not admit the allegations of the complaint but nevertheless excuse fault. Rather, it "defines the conduct to be expected of a prudent person in an emergency situation." Brooks v. Friedman, 769 N.E.2d 696, 699 (Ind. Ct. App. 2002), trans. denied.

The sudden emergency doctrine does not impose a lesser standard of care on a person presented with an emergency. D. Dobbs, 1 The Law of Torts, § 129 at 304 (West 2001). The individual is still expected to respond to the situation as a reasonably prudent person under the circumstances. The emergency is merely one of the circumstances to be considered in determining whether the actor's conduct was reasonable under all of the circumstances. Keeton, supra, at 196-97. Thus, a person may be found negligent if his actions are deemed unreasonable, despite the emergency. Id. As the Court of Appeals stated in Compton v. Pletch, 561 N.E.2d 803, 807 (Ind. Ct. App. 1990), aff'd, 580 N.E.2d 664, 664 (Ind. 1991):

> The sudden emergency instruction informs the jury . . . how it is to allocate fault and apportion damages when the conduct of the person in question is that of an "ordinarily prudent person" when faced with an emergency situation. If the conduct of the person conforms to that standard, then the sudden emergency instruction informs the jury that the person is to be considered "not negligent" even though another course of action might have prevented the accident.

Viewing the sudden emergency doctrine as an affirmative defense under Rule 8(C) is at odds with these basic tort law principles. The sudden emergency doctrine does not accept the essential allegations of a plaintiff's negligence complaint. Rather it teaches that facts constituting an emergency are to be considered by the jury in determining whether the defendant's actions were reasonable under the circumstances. Finally, the Court of Appeals concluded that a mandatory pleading requirement for the sudden emergency doctrine would promote fairness by "minimizing the chances of trial by ambush" and would allow for better preparation of suits,

6

thereby promoting judicial efficiency. Willis, 803 N.E.2d at 1153. The same could be said for a number of other circumstances that may be claimed to explain conduct that may be seen as presumptively negligent. Discovery, not a pleading requirement, is the means the Rules provide to ferret these out. In sum, we do not agree that the sudden emergency doctrine is an affirmative defense within the meaning of Indiana Trial Rule 8(C). Trial Rule 8(C) is therefore no bar to the trial court's giving of a sudden emergency instruction. We express no opinion as to the desirability of such an instruction or any other potential challenge to the specific language used in this case.[4]

## II. Failure to Mitigate Damages

On transfer, the Willises argue that the trial court improperly instructed the jury on the affirmative defense of failure to mitigate damages because Westerfield did not produce expert medical opinion testimony that Ann's post-collision failure to follow physician-recommended treatment aggravated or increased her injuries. They contend that expert testimony is required to support such a defense, and in its absence an instruction on failure to mitigate was not supported by the evidence. The Court of Appeals initially rejected this claim, concluding that Westerfield's theory of the case—that Ann's failure to attend all physician-recommended physical therapy sessions increased her pain and suffering—was within the understanding of a lay person. Willis, 803 N.E.2d at 1155. However, on rehearing, the Court of Appeals reversed and remanded for trial of damages only, holding that the trial court had erred in giving a mitigation instruction because Westerfield had presented no expert medical opinion testimony of his own. Willis, 817 N.E.2d at 673.

"[T]he principle of mitigation of damages addresses conduct by an injured party that aggravates or increases the party's injuries." Deible v. Poole, 691 N.E.2d 1313, 1315 (Ind. Ct. App. 1998), (citations omitted), aff'd, 702 N.E.2d 1076, 1076 (Ind. 1998). As our recent decision in Kocher v. Getz, 824 N.E.2d 671, 674 (Ind. 2005) made clear, mitigation of damages is not an affirmative defense to liability. Rather, failure to mitigate damages is an affirmative defense that may reduce the amount of damages a plaintiff is entitled to recover after liability has

---

[4] The Willises did not allege that the instruction incorrectly stated the law, was unsupported by the evidence, or was substantively covered by other instructions. Nor do they contend it unduly emphasized one aspect of the evidence. Accordingly, we do not address any of these issues.

been found.  Id.  Put simply, a plaintiff in a negligence action has a duty to mitigate his or her post-injury damages, and the amount of damages a plaintiff is entitled to recover is reduced by those damages which reasonable care would have prevented.  Id.  The defendant bears the burden to prove that the plaintiff has not used reasonable diligence to mitigate damages.  Deible, 691 N.E.2d at 1315 (quoting Colonial Disc. Corp. v. Berkhardt, 435 N.E.2d 65, 67 (Ind. Ct. App. 1982)).  The defendant's burden includes proof of causation, that is, the defendant must prove that the plaintiff's unreasonable post-injury conduct has increased the plaintiff's harm, and if so, by how much.

The Court of Appeals took several recent cases to hold that proof of a failure to mitigate damages defense based on a plaintiff's failure to follow the advice of his or her treating physician requires the defendant to produce medical expert testimony, either through cross-examination of the plaintiff's expert witness or by presenting his or her own expert witness.  In some cases, the tendered evidence was merely that the plaintiff had missed some scheduled treatments.[5]  In others, there was no evidence establishing that the plaintiff's conduct caused any aggravation of injuries.[6]  We agree that in many cases, expert testimony may be required to es-

---

[5] See, e.g., Sikora v. Fromm, 782 N.E.2d 355, 362 (Ind. Ct. App. 2002), trans. denied (in a negligence action arising out of a car accident, affirming the trial court's refusal to instruct on failure to mitigate damages because the treating chiropractor's testimony that the plaintiff missed and rescheduled several appointments was insufficient to support "the inference that Fromm's [the plaintiff's] actions, or inactions, *aggravated or increased* his injuries."); Kristoff v. Glasson, 778 N.E.2d 465, 474-75 (Ind. Ct. App. 2002) (where the defendant argued that the plaintiff's continuing headaches were the result of the plaintiff's failure to follow a recommended home exercise program, holding broadly "The mitigation of damages claim went to the issue of medical causation and, as such, required medical expert testimony.").
[6] Wilkinson v. Swafford, 811 N.E.2d 374, 384 (Ind. Ct. App. 2004) (testimony elicited on cross-examination of plaintiff's treating physicians that the plaintiff failed to follow up in a timely manner, decided not to have a recommended surgery, decided not to have a nerve root block, and was uncooperative during a diagnostic exam, was insufficient to support a failure to mitigate damages instruction because the defendant "was required to produce some medical testimony that Wilkinson's actions, or inactions, aggravated or increased her injuries."); Mroz v. Harrison, 815 N.E.2d 551, 557 (Ind. Ct. App. 2004) (refusal to instruct the jury on failure to mitigate damages was proper where the defendant alleged that plaintiff failed to cooperate with prescribed treatment and exaggerated symptoms but did not present any medical expert testimony to establish a causal connection between these failures and an aggravation or increase in the plaintiff's injuries); Staton v. Hawkins, 818 N.E.2d 79, 84-87 (Ind. Ct. App. 2004) (where the defendant claimed that the plaintiff's decision to continue to ride and race four-wheel, all-terrain vehicles after a car collision aggravated and increased the plaintiff's wrist injury suffered in the collision, holding that "Recent Indiana case law clearly indicates that the affirmative defense of failure to mitigate damages requires medical causation evidence that a plaintiff's conduct aggravated or increased her injury" and concluding that the defendant had failed to produce such evidence).

tablish either the fact or the degree of aggravation of injury arising from failure to follow prescribed medical treatment. But that is not universally the case.

To the extent these cases suggest that expert testimony is always required, we believe that they overstate the evidence required to warrant a mitigation of damages instruction. The affirmative defense of failure to mitigate damages has two elements, and as to both the defendant bears the burden of proof by a preponderance of the evidence. First, the defendant must prove that the plaintiff failed to exercise reasonable care to mitigate his or her post-injury damages. Second, the defendant must prove that the plaintiff's failure to exercise reasonable care caused the plaintiff to suffer an identifiable item of harm not attributable to the defendant's negligent conduct. In this respect, the defendant bears the same burden with respect to this defense that the plaintiff bears with respect to the claim for damages. It is not enough to establish that the plaintiff acted unreasonably. The defendant must establish resulting identifiable quantifiable additional injury, just as the plaintiff must prove harm resulting from the defendant's acts. When, as here, a defendant claims that after an accident a plaintiff unreasonably failed to follow medical advice, in order to establish a failure to mitigate, the defendant must also prove that the plaintiff's actions caused the plaintiff to suffer a discrete, identifiable harm arising from that failure, and not arising from the defendant's acts alone.

The cases expressing a requirement of medical expert opinion testimony as to causation, reflect a concern that jurors may confuse correlation with causation, or may find for a defendant based on mere speculation that some of a plaintiff's injuries are attributable to the plaintiff's failure to follow treatment advice. We agree that these are legitimate concerns and agree that expert testimony will often be required to establish that the plaintiff's conduct caused any additional harm, and if so, how much. However, we do not believe that the causation analysis with respect to failure to mitigate damages defense always requires expert medical testimony. In the context of analyzing the proof required of a plaintiff alleging personal injuries, Johnson v. Bender, 174 Ind. App. 638, 644, 369 N.E.2d 936, 940 (1977), trans. denied, held that "The necessity of expert medical testimony to establish a causal connection generally depends upon the nature of the medical question involved. Thus, expert testimony is required where the question involves medical factors beyond the common knowledge of the layman such that the jury could only indulge in speculation in making a finding based thereon. However, on medical matters which are

9

within the common experience, observation, or knowledge of laymen, no expert testimony is required to permit a conclusion on causation." This analysis is as true of causation in failure to mitigate as it is of causation in the plaintiff's case. In many cases, medical expert testimony will be necessary to establish whether separate injuries are attributable to the defendant's negligence or flow from a plaintiff's post-injury failure to follow advice as to treatment. But in some cases, a lay juror can determine that a particular item of harm was caused by a plaintiff's unreasonable post-injury disregard of treatment advice. Accordingly, whether a failure to mitigate defense based on a plaintiff's failure to follow medical treatment advice requires expert medical testimony to establish causation must be resolved on a case-by-case basis.

In reviewing a trial court's decision to give or refuse a tendered instruction, this Court considers whether the instruction (1) correctly states the law, (2) is supported by the evidence in the record, and (3) is covered in substance by other instructions. The trial court has discretion in instructing the jury, and we will reverse on the last two issues only when the instructions amount to an abuse of discretion. Wal-Mart Stores, Inc. v. Wright, 774 N.E.2d 891, 893 (Ind. 2002). The selection of instructions is left to the sound discretion of the trial court so long as the instructions as a whole accurately and completely set forth the elements of the parties' claims and defenses. Thus, following the close of evidence, the trial court determines whether the defendant produced enough evidence of causation to support the giving of a mitigation of damages instruction. In making this determination, the trial court should consider the nature of the medical question presented and in particular whether the matter is within the common experience, observation, or knowledge of laymen. Johnson, 174 Ind. App. at 644, 369 N.E.2d at 940. If it is, and the defendant has produced competent non-expert evidence of causation, the defendant's failure to present expert opinion testimony on causation does not preclude an instruction on failure to mitigate. On the other hand, if the trial court finds that the medical question presented does require expert opinion testimony on causation, a defendant who has failed to point to such testimony at trial will not be entitled to a failure to mitigate damages instruction. This evidence may be elicited by cross-examination of the plaintiff's expert or by offering expert testimony for the defense. If it is in evidence, it is irrelevant who placed it there. See D. Dobbs, supra, § 198 at 493 ("To say that the defendant has the burden of proving an affirmative defense like contributory fault, is not to say that the evidence on that topic must originate with the defendant. The plaintiff's own evidence or admissions may suffice to show such fault.").

10

As a practical matter, the case-by-case approach will often lead to the same result as the bright line approach taken by the Court of Appeals. The trial court does not rule on whether to give a tendered instruction until after the close of evidence. A party presenting a failure to mitigate damages defense without expert testimony on causation will do so at his or her own peril. If, as is the case before us, the plaintiff's case-in-chief includes testimony from the plaintiff's treating doctors that the plaintiff failed to follow treatment advice but that failure did not cause increased injury, rebutting expert testimony will be required both to ensure a jury instruction on mitigation and ultimately to prevail on the issue before the jury.

In this case, the trial court erred in giving a failure to mitigate instruction because Westerfield failed to carry his burden to prove that Ann's post-injury disregard of advice as to treatment increased Ann's harm, and if so, by how much. On direct-examination, Dr. Silbert testified as follows:

Q: Has Ann Willis done anything unreasonable following her May 9, 1996, motor vehicle collision to aggravate or worsen her accident-related injuries in any way, in your opinion?

A: No she has not.

With respect to Ann's alleged failure to attend recommended physical therapy sessions after the collision, Dr. Silbert testified on cross examination by Westerfield:

Q: And so if they don't follow your recommendation to go to physical therapy when prescribed, they're not helping themselves, correct?

A: In that particular condition she didn't help herself.

Westerfield did not produce his own medical expert opinion testimony and argues that this cross-examination testimony was sufficient to warrant an instruction on failure to mitigate damages. We disagree. Applying the principles enunciated above, we find a failure to mitigate instruction inappropriate on these facts because Westerfield failed to carry his burden to show how Ann's alleged failure to follow Dr. Silbert's recommendation that she seek physical therapy increased her harm, and if so, by any quantifiable amount or specific item. Accordingly, we vacate the judgment as to damages and remand for a new trial on the issue of damages only.

### III. Refusal to Redact Portions of Video Deposition Testimony

11

The Willises claim that the trial court erred by denying their motion to redact portions of the video deposition testimony of their medical expert Dr. Silbert. They argue that they were unduly prejudiced by the jury's exposure to those parts of the deposition where defense counsel allegedly inquired into Ann's physical condition, pre-existing conditions, subsequent conditions and other unrelated conditions for which defense counsel knew no medical expert evidence of causation existed that causally linked the asserted conditions to the plaintiff's collision injuries. Willis, 817 N.E.2d 674. We agree with the Court of Appeals that the Willises' failure to provide the deposition precludes reversal on this ground.

## IV. Allocation of Fault

The Willises claim the trial court erred in allowing Westerfield to present evidence of Willis' fault and in allowing the jury to determine fault under Indiana's Comparative Fault Act. The Willises argue that when Westerfield sought leave to amend his answer to replace a contributory negligence argument with a request for allocation of fault under the Comparative Fault Act, Westerfield thereby implicitly conceded complete responsibility for the accident. There was no merit to this claim. The Court of Appeals properly held that Westerfield withdrew his affirmative defense of contributory negligence because the Indiana Comparative Fault Act governed this case and not because he was conceding he was completely at fault for the accident.

On transfer Westerfield also urges this Court to address allocation of fault. He argues that under the Comparative Fault Act, whether a plaintiff failed to mitigate damages is an allocation of fault issue. After Westerfield filed his Petition For Transfer, this Court ruled that mitigation of damages is an affirmative defense that may reduce the amount of damages a plaintiff is entitled to recover, but does not affect the ultimate issue of liability. Kocher, 824 N.E.2d at 674 (quoting Deible v. Poole, 691 N.E.2d at 1316). We find no basis to retry allocation of fault.

## Conclusion

Transfer is granted. The judgment of the trial court as to liability is affirmed. The judgment as to damages is vacated and this case is remanded for a new trial on the issue of damages only.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ. concur.

12