# OPINION ON REHEARING



FILED

Mar 02 2017, 9:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James A. Knauer
Steven E. Runyan
Kroger, Gardis & Regas, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Forrest Bowman, Jr.
Jennifer K. Bowman
Bowman & Bowman

Mark Crandley
Barnes & Thornburg, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Central Indiana Podiatry, P.C., Northwest Surgery Center, LLC, d/b/a Foot & Ankle Surgery Center, f/k/a Foot & Ankle Surgery Center, LLC and Anthony E. Miller, D.P.M., <br><br>*Appellants-Plaintiffs,* <br><br> v. <br><br> Barnes & Thornburg, LLP, <br><br> *Appellee-Defendant.* | March 2, 2017 <br><br> Court of Appeals Case No. 49A02-1603-PL-498 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Cynthia J. Ayers, Judge <br><br> Trial Court Cause No. 49D04-1210-PL-41939 |

**May, Judge.**

[1]     Central Indiana Podiatry, P.C., Northwest Surgery Center, LLC d/b/a Foot &

Ankle Surgery Center f/k/a Foot & Ankle Surgery Center, LLC ("FASC"),

and Anthony Miller, D.P.M. ("Miller") (collectively, "the Miller Parties") petition for rehearing of our decision dated October 19, 2016, in which we affirmed the trial court's grant of summary judgment in favor of Barnes & Thornburg ("B&T") based on our holding *sua sponte* the Miller Parties were precluded from advancing fraud-related arguments because they did not do so as part of a pleading. *Central Indiana Podiatry, P.C., et. al. v. Barnes & Thornburg, LLP*, 62 N.E.3d 440, 447 (Ind. Ct. App. 2016).[1] We grant rehearing to acknowledge and adopt our Indiana Supreme Court's holding in *Nichols v. Amax Coal Co.*, 490 N.E.2d 754, 755 (Ind. 1986), *reh'g denied,* and affirm the trial court's grant of summary judgment on grounds different than those expressed in our earlier opinion.

[2] Before the trial court, the Miller Parties alleged "B&T's actions in procuring the Release Agreement constituted fraudulent inducement and fraudulent concealment, and B&T engaged in constructive fraud." *Id*. at 447. The Miller Parties raised those allegations of fraud for the first time in their response to B&T's motion to dismiss, in which B&T argued the Miller Parties' action was precluded by the Fee Release, as that Release included a clause releasing B&T from relevant liability. We held the Miller Parties improperly presented their claims of fraud before the trial court because they did not "state a claim of fraud as required by [Indiana Trial Rule] 9(B)." *Id*. at 448.

---

[1] The facts of this case are quite complicated. *See Central Indiana Podiatry*, 62 N.E.3d at 442-7, for a full iteration of the proceedings appealed.

## *Application of Nichols and Indiana Trial Rules*

In their petition for rehearing, the Miller Parties argue our holding "runs afoul," (Reh'g Br. of Appellant at 2), of our Indiana Supreme Court's decision in *Nichols v. Amax Coal Co.*, 490 N.E.2d 754, 755 (Ind. 1986), *reh'g denied*. In that case, Nichols filed a breach of contract action against Amax, Inc., asserting the company violated her oral contract of employment. In their motion for summary judgment, Amax argued Nichols' action was barred by the statute of limitations. In her response to summary judgment, Nichols claimed Amax engaged in fraudulent concealment. The trial court ruled in favor of Amax on summary judgment, and our court affirmed, holding:

> [F]raud and concealment must be specifically pleaded. Nichols failed to allege fraud or concealment in her complaint or in any response to the answer filed by Amax Coal Company and Amax, Inc. Because Nichols failed to plead fraud or concealment as required by T.R. 9(B), the statute of limitations was not tolled.

*Nichols v. Amax Coal Co.*, 481 N.E.2d 1103, 1105 (Ind. Ct. App. 1985) (internal citations omitted), *reh'g denied with dissenting opinion at* 482 N.E.2d 776 (Ind. Ct. App. 1985), *vacated on transfer by Nichols v. Amax Coal Co.*, 490 N.E.2d 754 (Ind. 1986), *reh'g denied*. When our court denied rehearing, Judge Ratliff wrote an opinion dissenting from that decision.

On transfer, our Indiana Supreme Court adopted the reasoning of Judge Ratliff's dissent and held:

Initially, a plaintiff need not anticipate a *statute of limitations* defense and plead matter[s] in avoidance in the complaint. If the complaint shows on its face that the statute of limitations has run, the defendant may file a T.R. 12(B)(6) motion. Plaintiff may then amend to plead the facts in avoidance. On the other hand, if the defendant simply answers the complaint setting up the statute of limitations, the plaintiff may, but does not have to, file a reply in avoidance. The defendant may seek summary judgment, in which event it becomes incumbent upon the plaintiff to present facts raising a genuine issue in avoidance of the statute of limitations. If the case goes to trial, the plaintiff must establish the facts in avoidance of the statute of limitations.

*Nichols*, 490 N.E.2d at 755 (emphasis added).

While it appears at first blush that *Nichols* would create an exception to Trial Rule 9(B) that applies *only* to fraudulent concealment claims raised in response to a defendant raising a statute-of-limitations affirmative defense, such defense is among a long, non-exhaustive list of affirmative defenses set forth in Trial Rule 8(C). *Willis v. Westerfield*, 839 N.E.2d 1179, 1185 (Ind. 2006) (noting the non-exhaustive nature of T.R. 8(C)). B&T's defense of release is also listed in Rule 8(C). That the *Nichols* case refers by name only to the statute of limitations affirmative defense does not require we limit the holding to that defense: Judge Ratliff's reasoning directly and explicitly applied the principles of notice pleading, and did not rely upon some special feature of a statute of limitations defense or a fraudulent concealment claim pleaded in response. *See Nichols v. Amax Coal Co.*, 482 N.E.2d 776 (Ind. Ct. App. 1985) (Ratliff, J., dissenting), *vacated on transfer by Nichols v. Amax Coal Co.*, 490 N.E.2d 754 (Ind. 1986), *reh'g denied*.

[6]     Moreover, the *Nichols* case is in a very similar procedural posture to the case at bar. Nichols did not plead the fraud in anticipation of a statute of limitation affirmative defense, but Amax ultimately asserted the statute-of-limitation defense. Nichols then responded by alleging that Amax had engaged in fraudulent concealment that tolled the limitation period. Likewise, here, the Miller Parties' complaint did not include their allegations of the fraudulent creation of a Fee Release Agreement. B&T answered the Miller Parties' complaint by raising the Fee Release as an affirmative defense, and then B&T filed both a motion to dismiss and a motion for summary judgment based on the Fee Release. The Miller Parties did not respond to B&T's answer, but instead argued in response to B&T's motion to dismiss and motion for summary judgment that the Fee Release was obtained by fraud. Pursuant to *Nichols*, this was a procedurally appropriate manner in which to respond without waiving the claim of fraud. *See Nichols*, 490 N.E.2d at 755 (When the defendant answers with an affirmative defense, "the plaintiff may, but does not have to, file a reply in avoidance."). Thus, we grant rehearing to vacate our earlier holding in which we concluded the Miller Parties were precluded from advancing their claims of fraud because they did not specifically plead them as required by the Indiana Trial Rules.

[7]     Having reversed our prior decision, we return to the question with which we were originally faced on appeal – whether the trial court erred by granting summary judgment for B&T – and *Nichols* again tells us how to proceed: "The defendant may seek summary judgment, in which event it becomes incumbent

upon the plaintiff to present facts raising a genuine issue in avoidance of the [affirmative defense]." 490 N.E.2d at 755. To that end, we now examine whether the Miller Parties designated evidence that created a genuine issue of material fact about whether the Fee Release was procured by fraud.

### *Examination of Fraud Claims*

The Miller Parties argue the Fee Release is invalid because it was procured in the wake of B&T's fraudulent inducement, fraudulent concealment, and constructive fraud. All three types of fraud alleged require a misrepresentation and/or concealment. *See America's Directories, Inc. v. Sellhorn One Hour Photo, Inc.*, 833 N.E.2d 1059, 1068 (Ind. Ct. App. 2005) ("Fraudulent inducement occurs when a party is induced through fraudulent misrepresentations to enter into a contract."), *trans. denied*; *and see Brown v. Indiana Nat. Bank*, 476 N.E.2d 888, 891 (Ind. Ct. App. 1985) ("Fraudulent concealment is one type of actionable fraud in which one having a duty to disclose certain facts to another knowingly fails to do so, and as a result, the other relies upon this nondisclosure to his detriment."), *reh'g denied*, *trans. denied*; *and see Demming v. Underwood*, 943 N.E.2d 878, 892 (Ind. Ct. App. 2011) (the five elements of constructive fraud are (1) duty of the alleged fraudster due to their relationship with the alleged victim, (2) violation of that duty by way of misrepresentation or failure to act, (3) reliance thereon by the alleged victim, (4) injury to the alleged victim as a proximate result of the violation of duty, and (5) the alleged fraudster's gain of an advantage over the alleged victim), *reh'g denied*, *trans. denied*.

Specifically, the Miller Parties claim B&T

[(1)] failed to inform [the Miller Parties] that the Vogel Agreement did not give the Practice the bargain it thought it had obtained, (2) [B&T] proposed new, necessary, [sic] terms, and (3) [B&T] falsely represented to [the Miller Parties] that the Federal Litigation had been settled in order to get paid and obtain the Fee Dispute Release.

(Br. of Appellant at 22.) The Miller Parties further argued, on the issue of the bargain negotiated from the Federal Litigation settlement, that B&T

withheld the fact that it failed to include a durational term in the Vogel Agreement and that the Vogel Agreement itself was insufficient to give [the Miller Parties] the benefit of its bargain, because immediately after receiving the Vogel Agreement, [B&T attorney] initiated a plan to obtain additional terms he knew were necessary to give [the Miller Parties] the benefit of the bargain that [the Miller Parties] thought it had already achieved.

(*Id*. at 23.)

[10] However, these arguments do not comport with the designated evidence. While one B&T attorney testified during a deposition he worked to change the terms of the Vogel Agreement, specifically the change in corporation type, these changes were not concealed from Miller. In fact, B&T documented and testified they communicated at length with Miller regarding the change of FASC from an S-Corp to an LLC and what that would mean. B&T testified the change in corporation type was necessary to protect Miller's tax interests. (App. at 121-2; 410; 1049; 1058.)

[11] Miller claims if he had known about the deficiencies with the Settlement Agreement, he would have not signed the Fee Release. B&T required Miller to retain outside counsel to review the Fee Release prior to Miller signing it. B&T had a conversation with Jim Knauer, who was Miller's attorney at the time and is Miller's attorney on appeal. (*Id*. at 123.) As Miller's attorney, it was Knauer's responsibility to inquire regarding the status of the settlement of Federal claims filed by Vogel against the Miller Parties, as that was the litigation that spawned the fees to be released by the Fee Release Agreement. The Miller Parties have not demonstrated Knauer raised any questions about the status of the settlement or B&T responded deceptively to any questions Knauer or Miller may have asked. Knauer advised Miller to sign the Fee Release. The designated evidence does reveal Miller was in frequent contact with his entire litigation team at B&T and was permitted to review documents as they were prepared; none of the evidence Miller cites suggests B&T engaged in the web of concealment that Miller weaves in his argument.

[12] Further, Miller relies heavily on his statements set forth in an affidavit filed as part of the malpractice action. In the affidavit, he emphasizes the importance the durational time limit played in the Vogel Agreement, specifically that he thought Vogel would perform surgeries with FASC as long as he practiced in the area. (*Id*. at 884.) Miller argues had he known Vogel could terminate his affiliation with FASC under the original terms of the Vogel Agreement, he would not have signed the Fee Release. However, in his testimony as part of the Hamilton County Litigation, Miller testified multiple times that he was not

concerned about the time frame in which Vogel would perform surgeries at FASC and had not given the time frame much thought. (*Id*. at 410.)

[13] In *Gaboury v. Ireland Road Grace Brethren, Inc.*, our Indiana Supreme Court held, "contradictory testimony contained in an affidavit of the nonmovant may not be used by him to defeat a summary judgment motion where the only issue of fact raised by the affidavit is the credibility of the affiant." 446 N.E. 1310, 1314 (Ind. 1983), *reh'g denied*. Much of Miller's argument on appeal is about the alleged concealment of Vogel's concerns about implementing the Settlement Agreement resolving the federal litigation because Vogel wanted a durational time limit on his ownership of FASC. Miller's position regarding his concern with a durational time limit seems to change based on what would benefit him in a particular case. The changing nature of Miller's own testimony cannot create a genuine issue of material fact to defeat B&T's motion for summary judgment, as the time frame and the communication surrounding the Vogel Agreement and Vogel Litigation seem to be the crux of Miller's fraud allegations.

## Conclusion

[14] As there is no evidence creating a genuine issue of material fact from which a reasonable jury could conclude B&T concealed information from the Miller Parties, and as Miller's contradictory testimony in two different lawsuits cannot create an issue of material fact, we conclude the trial court did not err when it granted summary judgment in favor of B&T. We grant rehearing to acknowledge, adopt, and apply our Indiana Supreme Court's holding in *Nichols*;

vacate our prior opinion, *Podiatry*, 62 N.E.3d 440 (Ind. Ct. App. 2016); and affirm the trial court's grant of summary judgment for B&T.

Bailey, J., concurs.

Crone, J., concurs with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Central Indiana Podiatry, P.C., Northwest Surgery Center, LLC, d/b/a Foot & Ankle Surgery Center, f/k/a Foot & Ankle Surgery Center, LLC and Anthony E. Miller, D.P.M., | Court of Appeals Case No. 49A02-1603-PL-498 |
| *Appellants-Plaintiffs,* | |
| v. | |
| Barnes & Thornburg, LLP, | |
| *Appellee-Defendant.* | |

**Crone, Judge, concurring.**

I agree with the granting of rehearing in this case. I write separately to reiterate my concerns about "allowing attorneys to prospectively insulate themselves from liability for future acts of legal malpractice" under Indiana Rule of Professional Conduct 1.8(h), which, in my view, "subverts the very nature of the attorney-client relationship." *Cent. Ind. Podiatry*, 62 N.E.3d at 449, 450 (Crone, J., concurring).