

FILED

Mar 20 2020, 9:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew A. Crosmer
Rubino, Ruman, Crosmer & Polen
Dyer, Indiana

ATTORNEYS FOR APPELLEE JOE
JONES, JR.

Shawn C. Swope
Cassandra J. Neal
Swope Law Offices, LLC
Dyer, Indiana

ATTORNEY FOR APPELLEE
ALLSTATE INSURANCE
COMPANY

Harold G. Hagberg
Hagberg & Associates
Crown Point, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marlo Harris, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Joe Jones, Jr., and Allstate <br> Insurance Company, <br><br> *Appellees-Defendants* | March 20, 2020 <br><br> Court of Appeals Case No. <br> 19A-CT-1196 <br><br> Appeal from the Lake Superior <br> Court <br><br> The Honorable Bruce D. Parent, <br> Judge <br><br> Trial Court Cause No. <br> 45D11-1406-CT-121 |

**Crone, Judge.**

## Case Summary

Marlo Harris filed a complaint for damages against Joe Jones, Jr., and Allstate Insurance Company (collectively "Defendants") following a motor vehicle collision. A jury returned a verdict in favor of Harris in the amount of $10,000. The trial court subsequently entered an order assessing attorney's fees against Harris in the amount of $1000 due to her rejection of Jones's qualified settlement offer. Unsatisfied with these results, Harris now appeals, raising several issues that revolve around whether the trial court abused its discretion in instructing the jury and in excluding and admitting certain evidence. Finding reversible instructional error, we reverse and remand for a new trial on damages only. We also vacate the trial court's assessment of fees against Harris.

## Facts and Procedural History

In the early morning hours of November 30, 2013, Harris was driving a vehicle owned by her grandmother on Interstate 80 in Hammond when she was involved in a collision with Jones. Jones struck the back of Harris's vehicle, causing minimal damage to Harris's vehicle. Thereafter, Harris filed a complaint for damages against Jones and her grandmother's insurer, Allstate, alleging negligence, recklessness, and willful and wanton misconduct against Jones and breach of contract against Allstate. Specifically, Harris alleged that Jones negligently and recklessly caused the collision to occur, and that he committed misconduct by driving while intoxicated and impaired, failing to keep a proper lookout, and endangering the welfare of others. Harris further alleged that Allstate breached the contract of insurance and was liable for any

damages caused by Jones as an uninsured/underinsured motorist. Harris sought both compensatory and punitive damages.

[3] A jury trial began on May 8, 2019. Portions from the transcript of the video deposition of Dr. Ilesh Kurani were read to the jury. Dr. Kurani testified that her predecessor, Dr. Patel, Harris's treating physician, saw Harris after the accident and diagnosed her with "acute lumbar disk disease with left radiculopathy[,]" which is a soft tissue injury that "c[a]me on suddenly without any prior chronic incidence onset." Tr. Vol. 2 at 152, 156, 198. Dr. Patel referred Harris for an MRI in order to determine the cause of her radicular symptoms. Reviewing Harris's medical records, Dr. Kurani confirmed that Harris never completed the MRI because she "became claustrophobic, so could not finish the test." *Id.* at 151. Dr. Kurani stated that an MRI is a diagnostic tool that "could" have shown whether "there was a disk injury" and/or whether there were "pre-existing degenerative" spinal issues. *Id*. at 195. During trial, Harris testified that she experienced lower back pain following the accident that continued to worsen, so she went to see Dr. Patel. Harris stated that Dr. Patel treated her with pain medication and injections. Although Dr. Patel originally placed certain restrictions upon her return to work, Harris was eventually released by Dr. Patel "with no restrictions" in February 2014. *Id*. at 157. Harris admitted that while she continued to experience pain, she did not have any medical treatment during the four years prior to trial. She stated that not a day goes by when she does not have back pain and that she also often experiences tingling and numbness in her legs.

[4] After hearing from additional witnesses and closing arguments of counsel, the jury found Jones to be 100% at fault and awarded Harris compensatory damages in the amount of $10,000. The jury awarded Harris zero punitive damages. Jones subsequently filed a motion for attorney's fees pursuant to Indiana Code Section 34-50-1-6 based upon Harris's rejection of a pretrial settlement offer of $25,000. The trial court granted the motion and awarded $1000 in fees to Jones. This appeal ensued.

## Discussion and Decision

## The trial court abused its discretion and committed reversible error in giving a failure to mitigate instruction to the jury.

[5] Among other things, Harris asserts that the trial court abused its discretion in instructing the jury regarding her alleged failure to mitigate damages. Specifically, Defendants proffered a pattern final jury instruction that provided,

> Marlo Harris must use reasonable care to minimize her damages after she is injured. Marlo Harris may not recover for any item of damage that she could have avoided through the use of reasonable care. Defendants have the burden of proving by the greater weight of the evidence that Marlo Harris failed to use reasonable care to minimize her damages. Do not consider failure to minimize damages as fault. Rather you may consider failure to minimize damages [to] reduce the amount of damages that Marlo Harris claims.

Tr. Vol. 3 at 99.[1]  Harris objected and asserted that there was insufficient evidence to support the giving of a failure-to-mitigate instruction.  Harris's counsel argued that Defendants had presented insufficient evidence of causation, that is, they failed to prove that Harris's post-injury conduct increased her harm, and if so, by how much.  The trial court overruled the objection and permitted the instruction to be read to the jury.

[6]  When reviewing a trial court's decision to give or refuse a tendered instruction, we consider whether: "1) the instruction correctly states the law; 2) the evidence in the record supports giving the instruction, and 3) the substance of the instruction is covered by other instructions." *Humphrey v. Tuck*, 132 N.E.3d 512, 515 (Ind. Ct. App. 2019) (citation omitted).  "In determining whether sufficient evidence exists to support an instruction, we will look only to that evidence most favorable to the appellee and any reasonable inferences to be drawn therefrom." *Id.*  This Court reviews a trial court's decision to give or refuse to give an instruction only for an abuse of discretion. *Id*.

[7]  Regarding failure to mitigate specifically, our supreme court has explained,

> [T]he principle of mitigation of damages addresses conduct by an injured party that aggravates or increases the party's injuries. ....
> [F]ailure to mitigate damages is an affirmative defense that may reduce the amount of damages a plaintiff is entitled to recover after liability has been found. Put simply, a plaintiff in a negligence action has a duty to mitigate his or her post-injury

---

[1] *See* IND. MODEL CIVIL JURY INSTRUCTION 935 (2019).

damages, and the amount of damages a plaintiff is entitled to recover is reduced by those damages which reasonable care would have prevented. The defendant bears the burden to prove that the plaintiff has not used reasonable diligence to mitigate damages. The defendant's burden includes proof of causation, that is, the defendant must prove that the plaintiff's unreasonable post-injury conduct has increased the plaintiff's harm, and if so, by how much.

*Willis v. Westerfield*, 839 N.E.2d 1179, 1187 (Ind. 2006) (citations and quotation marks omitted).

[8] In short, "[t]he affirmative defense of failure to mitigate damages has two elements, and as to both the defendant bears the burden of proof by a preponderance of the evidence." *Id*. at 1188. "First, the defendant must prove that the plaintiff failed to exercise reasonable care to mitigate his or her post-injury damages." *Id*. Next, "the defendant must prove that the plaintiff's failure to exercise reasonable care caused the plaintiff to suffer an identifiable item of harm not attributable to the defendant's negligent conduct. "It is not enough to establish that the plaintiff acted unreasonably." *Id*. The defendant must establish "resulting identifiable quantifiable additional injury." *Id*.

[9] Here, even assuming that there was sufficient evidence from which the jury could have determined that Harris failed to exercise reasonable care to mitigate her post-injury damages, we find a complete lack of evidence on the second element, which required Defendants to point to a resulting identifiable quantifiable injury. The only expert medical testimony presented at trial was the transcript of the video deposition of Dr. Kurani. In reviewing medical

records from Harris's former physician, Dr. Patel, Dr. Kurani confirmed that Harris did not complete an MRI that was recommended by Dr. Patel following the accident. Dr. Kurani was not asked whether and never suggested that Harris's failure to obtain an MRI or to seek additional medical care caused her to suffer additional injury or any identifiable item of harm not attributable to the accident.

[10] Defendants[2] argue that expert testimony was not required to meet their burden of proof on the second element, and that the lay jury could simply conclude based upon the evidence presented that Harris's post-injury conduct aggravated or increased her injuries. Defendants are correct that although expert testimony will often be required to establish that the plaintiff's conduct caused additional harm, and the amount of such harm, expert testimony is not always required. *Willis*, 839 N.E.2d at 1188. Indeed, whether a failure-to-mitigate defense requires expert medical testimony to establish causation must be resolved on a case-by-case basis. *Id*. at 1189.

[11] As a general matter, expert testimony is required where the question involves medical factors beyond the common knowledge of a layperson such that the jury could only indulge in speculation in making a finding based thereon. *Id.* But, "on medical matters which are within the common experience, observation, or knowledge of [laypersons], no expert testimony is required to

---

[2] Although Jones and Allstate filed separate briefs and make separate arguments on appeal, they make similar arguments in this regard, so we need not address their arguments separately.

permit a conclusion on causation." *Id*. In other words, in many cases, medical expert testimony will be necessary to establish whether separate injuries are attributable to the defendant's negligence or flow from a plaintiff's post-injury failure to follow advice as to treatment. *Id*. But in other cases, a lay juror can determine that a particular item of harm was caused by a plaintiff's unreasonable post-injury disregard of treatment advice. *Id*. In making this determination, the trial court should consider the nature of the medical question presented and, in particular, whether the matter is within the common experience, observation, or knowledge of laypersons. *Id*.

[12] The parties agree that Harris's alleged injuries (back and radicular pain/numbness) are subjective in nature, rather than objective, because she perceived the injuries and reported them to her doctor, but the injuries are not ones the doctor could observe. *See Martin v. Ramos*, 120 N.E.3d 244, 250 (Ind. Ct. App. 2019) (explaining difference between subjective and objective injuries). We have held that where a plaintiff's injuries are subjective in nature, expert medical testimony is required to prove causation. *Topp v. Leffers*, 838 N.E.2d 1027, 1033 (Ind. Ct. App. 2005), *trans. denied* (2006). This same principle applies whether we are talking about causation in failure to mitigate or causation in the plaintiff's case. *Willis*, 839 N.E.2d at 1188. Accordingly, we conclude that expert testimony was necessary in this case to establish whether Harris suffered increased identifiable quantifiable harm that was not attributable to Jones's negligence but instead flowed from Harris's post-injury conduct.

[13] Regardless, we have a complete lack of *any* evidence, expert or otherwise, that additional harm was caused by Harris's post-injury conduct, much less the amount of such harm. In other words, there was no evidence of a separate, discrete, identifiable harm caused by Harris's allegedly unreasonable post-injury conduct or how much damage was caused or proximately caused by this conduct. The only evidence before the jury was this: Harris felt pain after the accident, she did not participate in the diagnostic testing recommended by her doctor, she eventually returned to work, and she did not seek further medical treatment after February 2014 despite continuing to feel pain. Absent even a scintilla of evidence that Harris's behavior resulted in an "identifiable quantifiable additional injury," a failure-to-mitigate instruction was wholly unwarranted. We conclude that the trial court abused its discretion in giving such an instruction.

[14] Our supreme court has explained that instructional error is subject to a harmless-error analysis, which provides that an "erroneous jury instruction merits reversal if it could have formed a basis for the jury's verdict." *Fleetwood Enter., Inc. v. Progressive N. Ins. Co.,* 749 N.E.2d 492, 495 (Ind. 2001).[3] Because the jury here issued a general verdict and we cannot discern whether Harris's

---

[3] In *Simmons v. Erie Insurance Exchange, Inc.*, 891 N.E.2d 1059, 1071 (Ind. Ct. App. 2008), this Court noted that in addition to the harmless error standard provided by *Fleetwood*, our supreme court has stated that "one seeking a new trial on the basis of an improper jury instruction must show 'a reasonable probability that substantial rights of the complaining party have been adversely affected.'" *Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 944 (Ind. 2001). We note that the jury awarded compensatory damages to Harris that were significantly below the amount of the qualified settlement offer. This indicates a reasonable probability that the failure-to-mitigate instruction adversely affected her substantial rights. Thus, we conclude that reversal would be warranted here under either standard.

damages were reduced due to her alleged failure to mitigate, the erroneous instruction "could have" formed the basis for the compensatory damages award. Accordingly, we reverse and remand for a new trial on damages only.[4] *See*, *e.g.*, *Willis*, 839 N.E.2d at 1190 (reversing and remanding for new trial on damages due to erroneous failure-to-mitigate instruction); *Humphrey*, 132 N.E.3d at 517 (same); *Buhring v. Tavoletti*, 905 N.E.2d 1059, 1068 (Ind. Ct. App. 2009) (same). We also vacate the trial court's order assessing $1000 in attorney's fees, expenses, and costs against Harris and in favor of Jones because the damages award underlying that assessment has been reversed.[5]

[15] Reversed and remanded.

May, J., and Pyle, J., concur.

---

[4] Harris also asserts that the trial court committed reversible error in the admission and exclusion of certain evidence during trial. Because we reverse, and because those evidentiary issues may or may not arise on remand, we decline to address them. Indeed, a review of Harris's specific claims reveals that each of the trial court's rulings was made in the specific trial context in which those items of evidence were offered, and that context, as well as the parties' arguments in favor of and opposing admission or exclusion, could surely change upon remand. A cardinal principle of the judicial function is that courts should not issue advisory opinions but instead should decide cases only on the specific facts of the particular case and not on hypothetical situations. *Snyder v. King*, 958 N.E.2d 764, 786 (Ind. 2011).

[5] Indiana Code Section 34-50-1-6 provides that attorney's fees, expenses, and costs of not more than $1000 may be awarded to the offeror of a qualified settlement offer ("QSO") if the recipient of the QSO receives a final judgment that is less favorable than the terms of the QSO. As noted earlier, Harris received a QSO of $25,000 and a final judgment of only $10,000. Jones's App. Vol. 2 at 2, 6. However, that final judgment has been reversed.